(34 Misc. Rep. 486.)

### NUTZHORN et al. v. SITTIG et al.

(Supreme Court, Special Term, New York County. April, 1901.)

WILLS—REVOCATION OF BEQUEST.

> Testatrix devised six lots to six relatives, and bequeathed a mortgage of $40,000 to satisfy mortgages of about the same amount existing on five of the six lots. Thereafter she contracted to sell the six lots subject to the mortgage for $5,000 and a lot which was mortgaged for $30,000, but died before the contract was closed. The contract was completed by her executors under a power of sale, and they took in exchange $5,000 and a deed of the lot mortgaged for $30,000 running to the specific devisees. The executors sued to reform this deed in order to dispose of such lot among the residuary legatees, and to have it declared that the bequest of the $40,000 which had been paid in was revoked. *Held*, that the bequest and the devise to the specific devisees and legatees were not revoked by the executory contract for the sale of the lots, but such devisees and legatees were entitled to hold the lot mortgaged for $30,000, and the executors were required to apply the $40,000 paid in to the payment of the mortgage on the lot which the executors had secured; the balance thereof, as well as the $5,000, to be paid to the specific devisees and legatees.

Action by Henry M. Nutzhorn and others against Annie S. Sittig and others to reform a deed and for other relief. Decree for plaintiffs.

Thomas Gilleran, for plaintiffs.
Rabe & Keller, for defendants.

RUSSELL, J. Do a devise and a bequest fail because of an implied revocation on account of a contract by the testatrix, a few months later than the will, to sell the lands devised to a purchaser? The testatrix, Marie Ernst, taking her title to the realty and personalty from the will of her deceased husband, Otto Ernst, made in 1895, executed her will January 4, 1897, making her relatives and those of her husband beneficiaries, she dying childless. By that will she devised to her sister, brother, three nephews, and a child of her deceased husband, Mrs. Sittig, severally, six lots, Nos. 101 to 111, inclusive, Manhattan avenue, in the city of New York, five of these lots being subject to mortgages aggregating $40,500. She bequeathed the proceeds of a mortgage of $40,000, held by her as the proceeds of a sale of other realty devised by her husband to her, to satisfy the liens of the mortgages on five of the lots, amounting to $500 more than the amount of the mortgage she so applied, and which latter mortgage was sufficient, with the accrued interest, to satisfy the others. She gave her residuary estate to 10 other beneficiaries

in equal divisions. On the 1st day of July, 1897,—less than six months after her will was made;—she contracted to sell the six lots so devised to John F. Kohler, subject to the liens of the mort: gages amounting to $40,500. By the terms of the contract the purchaser paid only $500 down,—a sum less than the commission on the sale,—and was to pay $5,000 more on the exchange of the deeds, and also execute a conveyance of No. 304 West 102d street, subject to a mortgage on that lot of $30,000. She died the 13th of July, 1897, prior to the time appointed for the closing of the contract by exchange of the deeds and payment; and her executors, the plaintiffs here, under the power conferred by her will, transferred the six lots on Manhattan avenue to Kohler, received the $5,000, and took a deed from Kohler of the lot 304 West 102d street, subject to the mortgage of $30,000, to the six devisees of those lots on Manhattan avenue. Later the executors also received payment of the $40,-000 owing on the mortgage to her estate. On subsequent reflection, or upon advice of counsel, the executors concluded they had made a mistake, and retained to themselves, for the purposes of their trust, the $5,000 received from Kohler and the $40,000 and accrued interest received from the mortgagor on the mortgage owing the estate. They also brought this action to reform the conveyance from Kohler by substituting the names of the executors of Mrs. Ernst as grantees, so that they could dispose of the property under their trust for the residuary beneficiaries under the will; to declare that the executors received such property for the purposes of the will; that the devisees took no title at the death of the testatrix; and that the $40,000 bequest was also impliedly revoked by the contract of sale of the six lots on Manhattan avenue, which that bequest was designed to relieve from the burden of the five mortgages.

It is very evident that, if the claim of the executors here be sustained, the intent of the testatrix will be defeated. In express conformity to the wishes of her husband, and apparently with a hearty desire to conform to those wishes on her own part, she devises to five near relatives of her own and the daughter of her husband the Manhattan avenue lots, and lifts them from the burden of the mortgages resting upon them by the dedication of a sufficient amount of personalty to send them free to the devisees. By that same will she devises and bequeaths to 10 other beneficiaries her residuary estate, and the effect of a revocation of the specific devises and bequests would be to enrich those 10 beneficiaries to the extent of $71,000, which neither she nor her husband intended to give them, and to deprive her husband's daughter, her own sister and brother, and her three nephews, not only of this sum, but of any benefit under her will in which she was devising and bequeathing the property which she had taken by the testament of her deceased husband. At her death the corpus of the thing devised and bequeathed was substantially the same in identity and availability of transfer to the devisees as when she made her will, although the character of the property was changed if the purchaser under the executory contract fulfilled his obligations. There is nothing to show that the devise was made upon the foundation of giving that specific property on account of its peculiar character, oth-

er than as it happened to be suitable in its form of several devises in six portions to the same number of beneficiaries. The will was not to take effect until after her death, and the burden of carrying the Manhattan avenue lots as real estate, with the necessity to look after the taxes, the interest on the mortgages, the repairs and other outgoes, may well have prompted her to convert them into money and a single house and lot more available to her in the control of her estate. There is nothing to indicate that she by that act intended to exclude these near relatives from the benefits under her will.

The doctrine that a sale cancels a specific devise rests upon the implication to be drawn from the act. That act is a voluntary one of the testatrix, and when she, under the will, gave a certain amount of property in a specific form of realty, the courts held, prior to the Revised Statutes, that an utter passing away of the title from the testatrix impliedly revoked the devise. Beck v. McGillis, 9 Barb. 35, 55; Vandemark v. Vandemark, 26 Barb. 416, approved in McNaughton v. McNaughton, 34 N. Y. 203. The revisers discovered that such a result was calculated to work great injustice, and by the Revised Statutes of 1830 four sections were incorporated in the chapter on wills and testaments, effecting a serious change in the unwritten law. The first of these sections provided that a bond, agreement, or covenant, made for a valuable consideration, to convey property which was either devised or bequeathed, should not be deemed a revocation, and that the same property should pass by the devise or bequest subject to the rights of the transferee. The second section declared that a charge or incumbrance upon real or personal estate should not be deemed a revocation, but the devise and legacy should pass subject to the incumbrance. The third section declared that even a conveyance, settlement, or deed which altered the estate or interest of the testator in property devised or bequeathed should not be deemed a revocation. The fourth section announced what would be, undoubtedly, the conclusion from the other three,—that, if the provisions of the instrument by which the alteration was made were wholly inconsistent with the terms of the devise or bequest, the instrument should operate as a revocation, unless such provisions depended upon conditions which were not performed. 2 Rev. St. p. 64, §§ 45–48. Under these provisions of the statute it was early held that an agreement to sell, no deed being given, was not a revocation. Knight v. Weatherwax, 7 Paige, 182. I have been unable to discover any criticism of this case in all the subsequent statements of precedents in the courts of the state of New York, and the court of appeals has gone to extreme lengths, with two judges dissenting, in holding that, where a father paid his child in full for her share of the estate, and took a receipt to that effect from her, still this act did not revoke a previous devise in his will for her benefit. Burnham v. Comfort, 108 N. Y. 535, 15 N. E. 710. I am inclined to think that, even if the Revised Statutes had never been enacted, under the peculiar circumstances of this case the courts would not hold that the contract of sale impliedly revoked the devise and bequest. The consequences of such a holding would be too serious in the utter destruction of benefit to the specific beneficiaries, and an accumulation of unexpected benefits to the re-

siduary beneficiaries too far away from the presumed intent of the testatrix, to justify any holding that the expressed intent of that testatrix, as declared by the solemn act of her will, was destroyed by the constructive effect of a subsequent act, which did not at all incapacitate her executors from carrying out the substance of that will in fully as satisfactory a form as that which she originally intended. Not only would the value of the property devised be lost to the beneficiaries, but the $40,000 mortgage be wholly diverted from the purpose declared in the will, with no evidence of any substitution of purpose by the testatrix to place the value of the real estate and mortgage in other hands after she should pass away. The conclusion therefore follows that the executors were right in their first supposition that the 102d street house went to the specific devisees. They must also devote to the discharge of the mortgage thereon $30,000 of the sum received from the mortgage owned by the testatrix, and pay to the devisees the $10,000 balance, together with the $5,000 received from Kohler.

Ordered accordingly.