[L. A. No. 2058. In Bank.—October 10, 1908.]

J. E. CARR, Respondent, v. R. H. HOWELL, Administrator with the Will Annexed of the Estate of Lelia Bonner Dwyer, Deceased, Appellant.

SPECIFIC PERFORMANCE—UNCERTAINTY OF DESCRIPTION—AID FROM EXTRINSIC FACTS.—Where the description of the land agreed to be sold in a written contract is too uncertain in itself to admit of a specific performance of the contract, aid may be had from extrinsic facts to render it certain.

ID.—BUT ONE TRACT OWNED BY VENDEE ANSWERING DESCRIPTION.—A description of land in a written contract of sale as "56 x 155 feet to an alley, on the east side of Broadway between Sixth and Seventh streets, in the city of Los Angeles, Cal., and being a part of lot seven (7) in block 17, Ord's survey," while in itself too uncertain to warrant a specific performance, may, under appropriate pleadings, be made certain by evidence that the vendor owned but one piece of land which could possibly answer the description given in the contract, and that the piece owned did answer such description.

ID.—MORTGAGE TO SECURE PURCHASE PRICE—UNCERTAINTY AS TO COVENANTS.—A contract for the sale of land, which provided for a mortgage to be executed by the purchaser at the time of the convey-

ance of the land, to secure payment of part of the purchase price, and which definitely fixed the amount of the notes to be secured, the rate of interest they were to bear, the time they were to run, and the rebate to be allowed for payment of taxes by the mortgagor, is not rendered so uncertain as to prevent its specific performance merely because it did not state what covenants the mortgage was to contain.

ID.—DELIVERY OF CONTRACT—CONSTRUCTIVE DELIVERY.—The principles laid down in section 1059 of the Civil Code, that "though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: 1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or, 2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed," are equally applicable to any contract. Tested by these principles, the evidence is held sufficient to sustain the finding of the delivery of the contract of sale in the present case.

ID.—DELIVERY TO AGENT OF VENDOR.—A vendor under a contract for the sale of land may make her own agent a custodian of the contract for the benefit of the vendee, so that a delivery of the contract to such agent will operate as a delivery to the vendee.

ID.—FRAUD—INADEQUACY OF PRICE—EVIDENCE.—Upon a review of the evidence, it is held to sustain the findings that the contract in question was not obtained by fraud, and that the agreed purchase price was not inadequate.

ID.—TIME NOT ESSENCE OF CONTRACT—DEFAULT OF VENDEE.—Where time is not made of the essence of a contract for the sale of lands, and by its terms the parties mutually agreed to perform their respective agreements "on or before May 13" of a specified year, the vendee is not in default in failing, by a few minutes, to comply with the demand of the vendor that he perform by a certain hour on the 26th of April.

ID.—REMOVAL TO FEDERAL COURT—DISMISSAL BY PLAINTIFF—JUDGMENT NOT BAR TO SUBSEQUENT ACTION.—Where an action for the specific performance of a contract for the sale of land, originally brought in a state court, is removed by the defendant to the circuit court of the United States on account of the diverse citizenship of the parties, and thereafter, while a demurrer to the complaint therein was pending and undecided, the plaintiff voluntarily obtains a dismissal of the action by the federal court and the entry of a judgment of dismissal, such judgment is not a bar to a subsequent action in the state court upon the same cause of action.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

George J. Leowy, Hunsaker & Britt, and Valentine & Newby, for Appellant.

Barker & Bowen, Gray, Barker & Bowen, and J. S. Chipman, for Respondent.

SHAW, J.—This is an action to enforce specific performance of an agreement for the sale of real estate alleged to have been executed to the plaintiff by Lelia Bonner Dwyer in her lifetime. The defendant appeals from the judgment in favor of plaintiff and from an order denying her motion for a new trial.

The first point argued is that the agreement in question is so uncertain, both in the description of the property agreed to be conveyed and in regard to the terms of the mortgage to be given for the unpaid purchase money, that it is not susceptible of specific performance. The agreement is as follows:—

"LOS ANGELES, CAL., March 4th, 1905.

"Received of J. E. Carr the sum of one thousand dollars ($1,000) as a deposit and part payment on 56 x 155 feet to an alley, on the east side of Broadway between Sixth and Seventh streets, in the city of Los Angeles, Cal., and being a part of lot seven (7) in block 17, Ord's survey, which I this day agree to sell and the said Carr agrees to buy, at the purchase price of one hundred thousand dollars, subject to a three year lease containing a cancellation clause in case of sale of said property by me.

"On or before May 13th, 1905, I agree to furnish said Carr a certificate of title by the Title Insurance & Trust Co., of Los Angeles, and upon the delivery of said certificate of title and my deed conveying to said Carr said property free and clear of all encumbrances, the said Carr on or before said date of May 13th, 1905, simultaneously with the delivery of said deed and certificate of title, is to make me a further cash payment of nine thousand dollars ($9,000) and is to execute and deliver to me a purchase money mortgage back on said property securing the payment of six notes in the sum of fifteen thousand dollars ($15,000) each, due on or before one, two, three, four, five and six years, with interest at the rate of nine per cent per annum, payable annually, with an agreement back from

me to rebate three per cent per annum of said interest if held harmless on all mortgage taxes.

"Upon the consummation of this contract said Carr hereby agrees to pay Wesley Clark and W. I. Hollingsworth a commission of twenty-five hundred dollars ($2,500).

(Signed)    "LELIA BONNER DWYER.

"J. E. CARR."

This agreement, reasonably interpreted, describes a lot fifty-six feet wide and one hundred and fifty-five feet long, with side and end-lines parallel, and abutting on Broadway Street, but it does not clearly show whether it is the side or end-lines that abut on the street, nor does it show in what part of lot seven, block seventeen, it is situated. It is conceded that, without aid from extrinsic facts, the contract is too uncertain in these particulars to be capable of specific performance. The appellant relies upon the rule stated in *Marriner* v. *Dennison,* 78 Cal. 207, [20 Pac. 389], that "parol evidence cannot be heard to furnish a description. The only purposes for which such evidence can be heard is to apply the description to the subject-matter"; and in *Van Slyke* v. *Broadway Co.,* 115 Cal. 646, [47 Pac. 690, 928], that "parol evidence is inadmissible for the purpose of altering the legal operation of an instrument by evidence of an intention to an effect which is not expressed in the instrument."

The case of *Marriner* v. *Dennison,* 78 Cal. 207, [20 Pac. 389] however, also declares that "the rule as to the particularity of description required in executory contracts to convey is extremely liberal in favor of their sufficiency." The plaintiff in the case endeavored to make the description in the contract sufficient by setting forth at length a correct and complete description of the lot which it is alleged the parties intended should be described in the contract, and alleged that Lelia Bonner Dwyer at that time owned the particular tract of land described and that the said parcel was the only parcel of land she then owned situated in said lot seven of block seventeen of Ord's survey or on the east side of Broadway between Sixth and Seventh streets in the city of Los Angeles. With the aid of these extrinsic facts, which were fully proven by the evidence and found by the court to exist, the plaintiff claims that the contract was sufficiently certain.

The authorities fully sustain this view. In *Hurley* v. *Brown,* 98 Mass. 545, [96 Am. Dec. 671], the agreement declared that the vendor agreed to sell "a house and lot of land situated on Amity Street, Lynn, Mass." It was contended that this description was too uncertain to admit of specific performance. Regarding this the court said: "The presumption is strong that a description which actually corresponds with an estate owned by the contracting party, is intended to apply to that particular estate, although couched in such general terms as to agree equally well with another estate which he does not own. . . . If the party who enters into the agreement, in fact owns a parcel answering the description, and only one such, that must be regarded as the one to which the description refers. With the aid of this presumption the words '*a* house and lot' on a street where the party who uses the language owns only one estate, are as definite and precise as '*my* house and lot' would be; a description the sufficiency of which has been placed beyond doubt by very numerous authorities." In this case it was further stated that the fact that the vendor could lawfully make an agreement to sell land which he did not own did not prevent the application of the rule. This case was followed in the case of *Mead* v. *Parker,* 115 Mass. 413, [15 Am. Rep. 110], where a similar description was employed under similar circumstances. It may be conceded that the decisions are not entirely harmonious with respect to contracts of this vague character, but in our own state we have followed the rule of *Hurley* v. *Brown,* 98 Mass. 545, [96 Am. Dec. 671]. In *Preble* v. *Abrahams,* 88 Cal. 246, [22 Am. St. Rep. 301, 26 Pac. 99], Preble and Young agreed to sell to Abrahams "forty acres of the eighty-acre tract at Biggs." There was nothing else in the agreement which served to identify the property intended to be sold. It was shown by the evidence, however, that Preble and Young owned a certain specifically described eighty-acre tract at Biggs; that they simultaneously contracted to convey the western half thereof to another party and the eastern half thereof to the defendant, the two contracts being made with knowledge of all the parties concerned. In respect of this evidence as applied to the contract, the court said: "The evidence clearly shows that the parties perfectly understood that the sale and purchase was not of an undivided interest of forty acres in a

tract of eighty acres, but of forty acres in severalty. . . .
Nothing is made more clear by the evidence than that Mrs.
Biggs (the other party), with the full knowledge of all the
parties, purchased the forty acres of said eighty-acre tract
upon which the improvements were located. This is clearly
specified in the written agreement between her and the plain-
tiffs. They agreed to sell her forty acres, including the build-
ings and orchards on the forty acres, to be taken by her where
the houses and barns and orchards were at that time, and the
same place on which Mr. Biggs, Jr., and his family were resid-
ing. This and the agreement to sell to the defendant were
cotemporaneous. The defendant, if he agreed to purchase
anything, agreed to purchase the forty acres remaining after
the forty acres purchased by Mrs. Biggs had been segregated
from said eighty-acre tract." This case has been cited and
approved in *Towle* v. *Carmelo etc. Co.*, 99 Cal. 398, [33 Pac.
1126]; *Higgins* v. *Manson*, 126 Cal. 469, [77 Am. St. Rep.
192, 58 Pac. 907]; and *Brewer* v. *Horst etc. Co.*, 127 Cal. 647,
[60 Pac. 418]. The case of *Towle* v. *Carmelo etc. Co.*, 99 Cal.
398, [33 Pac. 1126], also approves the case of *Mead* v. *Parker*,
115 Mass. 413, [15 Am. Rep. 110]. *Bacon* v. *Leslie*, 50 Kan.
494, [34 Am. St. Rep. 134, 31 Pac. 1066], is a similar case.
There the description of the land was as follows: "½ of sec.
7-23-7, and all of sec. 18-23-7, in Sycamore Township, Butler
County, Kansas." To aid this description, it was alleged and
proven that the defendant at the time actually owned the
south half of section seven and that at that date he did not
own any other land in that section. Following *Hurley* v.
*Brown* and *Mead* v. *Parker*, the court held that this descrip-
tion, aided by the extrinsic circumstances mentioned, suffi-
ciently identified the property intended to be sold, and en-
forced specific performance accordingly.

The case at bar falls within these rules. Mrs. Dwyer owned
no other property which could have answered the description
given in the contract. The property which she did own fully
answered that description, and it would not be presumed that
she intended to sell and convey property which she did not
then own. Therefore, for the purposes of specific perform-
ance, as that remedy is applied in this state, the description
is sufficient. It may be further suggested that the agreement
further identifies the property intended to be conveyed by

stating that it was subject to a three-year lease containing a cancellation clause in case of a sale of the property by Mrs. Dwyer, the vendor. There was some indirect proof that the property described in the complaint was covered by such a lease, but the fact was not alleged in the complaint as a matter to be referred to in aid of the description.

In regard to the terms of the mortgage to be given by the purchaser, it is claimed that the agreement does not state what covenants it was to contain. The contract definitely fixed the amount of the respective notes, the rate of interest they were to bear, the time they were to run, and the rebate to be allowed for payment of mortgage taxes by the mortgagor. The notes and mortgage were required to be executed simultaneously with the delivery of the deed, and thus their proper dates were fixed. The fact that mortgages sometimes, or even usually, contain other terms and covenants than those here prescribed does not render the contract uncertain. It merely relieves the mortgagor from the necessity of inserting any covenants which the contract did not specify. There was no uncertainty in the terms and covenants specified in the contract, and the subsequent proceedings showed that the parties had no substantial difficulty in complying with the agreement in this respect.

It is next contended that the evidence fails to show that the contract which the plaintiff seeks to have specifically performed was ever executed, and the particular in which it is claimed there was a failure of proof is that there was no evidence of an actual delivery to the vendee. The evidence shows the following circumstances with relation to a delivery: Mrs. Dwyer, the vendor, resided in the city of New Orleans. Carr, the vendee, resided in Los Angeles, where the property was situated. Mr. Wesley Clark, a real estate broker in Los Angeles, was the local agent of Mrs. Dwyer, empowered to negotiate for the sale of her real estate in her behalf, but not authorized to execute a contract of sale. One Hollingsworth, who was acting as the agent for Carr, wrote to Mrs. Dwyer in New Orleans asking her terms for the sale of the property in question. She answered that Mr. Clark was her agent in Los Angeles, and referred Mr. Hollingsworth to Clark for further negotiations. Thereupon, after some talk between them as to price, the agents agreed that Carr would give one hundred

thousand dollars for the property upon the terms mentioned in the written contract sued on. The contract was thereupon drawn in duplicate by Mr. Clark and given to Hollingsworth to procure the signatures of Carr to each copy thereof. This Hollingsworth did, and returned the same to Clark to be transmitted to New Orleans for the signatures of Mrs. Dwyer. Thereupon, Clark sent a letter to Mrs. Dwyer, inclosing the two duplicate contracts, and containing the following statements: "I herewith inclose you contracts of sale with a check of one thousand dollars ($1,000) as a deposit on said contract. Sign both contracts and let me have one back for Mr. Carr, and also send me the certificate of title which you have by the Title Insurance & Trust Co. on this property, which I will have continued to date and be ready to close the deal so soon as Mr. Carr is ready. Mr. Carr is putting up a block, and for that reason he is a little shy on ready cash, but he says that he thinks he will have some money within a very short time, and so soon as he does, he will notify me and close the deal up at once without waiting to the time limit stated in the contract." These papers were received by Mrs. Dwyer at New Orleans, and, after consulting with her attorney there, she signed each copy, retained one of them and also the check for one thousand dollars, and delivered the other to her attorney, Hill, who by her direction thereupon sent it to Mr. Clark with the following letter from Hill to Clark in Los Angeles: "Your letter and agreement signed by Mr. J. E. Carr, of date March 4th, came duly to hand. Mrs. Dwyer signed this morning, and requests me to forward the agreement to you; also the certificate of title, which you require. What is the meaning of the nine per cent and the clause about mortgage taxes? We do not understand it, but sign, nevertheless, as you seem to approve it. Is there any custom, in sales with notes secured by mortgages for the purchaser to transfer insurance policies to cover the deferred payments? If so, we should like to get such security in this case." Immediately upon receipt of this signed contract, Clark informed Carr that he had the contract and was ready to close the deal as soon as Carr could perform his part of the contract. Hollingsworth appeared and asked Clark for the contract, as did also Mr. Barker, the attorney who was acting for Carr in the matter. Clark declined to give them the contract, but did give them a copy

thereof, and informed them that he wanted to close up the transaction immediately. Carr notified Clark that he was ready to close the deal, and Clark thereupon prepared a deed to be executed by Mrs. Dwyer and the form of notes and mortgage to be executed by Carr, and forwarded the deed to Mrs. Dwyer for execution and the notes and mortgage for the approval of her attorney. Mrs. Dwyer executed the deed as requested, and in about two weeks from the date of the contract sent the deed with the notes and mortgage to a bank in Los Angeles to be delivered when directed by Mr. Clark. Some negotiations ensued, owing, it appears, to the fact that Clark suspected that Hollingsworth was interested in the purchase and was unwilling to close the deal unless he had a larger share of the commission than that specified in the contract. It was not contended, however, at any time by Clark, nor by Mrs. Dwyer, that the agreement was not fully executed. Clark finally became satisfied that his suspicion that Hollingsworth had an interest was groundless, and demanded the immediate carrying out of the contract, notifying Carr that unless this was done by 2 o'clock of April 26th, he would direct that the papers be returned by the bank to New Orleans. It will be observed that time was not of the essence of the contract and that by its terms the parties could offer to perform on or before May 13th, 1905. A few minutes after the time specified by Clark in his notice, Carr expressly waived all the objections he had previously made to the title and offered to perform the contract, tendering the money and the duly executed notes and mortgage, but the offer was refused.

Upon these facts the court found that the contract sued on was duly executed. It is contended that this could not have been so unless there had been an actual delivery of the paper to the vendee, Mr. Carr. This, however, is not necessary in all cases. The Civil Code (sec. 1059) provides that "though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: 1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or, 2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed." While this section relates by

its terms to a grant, we think the principles therein laid down are equally applicable to any contract. The force and effect of the evidence and the inferences to be reasonably drawn therefrom were for the consideration of the court below. The letter which Clark wrote to Mrs. Dwyer inclosing the duplicate copy of the contract signed by Carr contained a request that she should sign both contracts and let Clark have one back "for Mr. Carr." Evidently the court below construed this to mean that the contract was to be returned to Mr. Clark to be held by him, not as her agent, but as the agent of Mr. Carr, the vendee. Under the circumstances of the case it cannot be contended that it would not reasonably bear this construction. In pursuance of this request Mrs. Dwyer signed the two agreements, kept one, retained the money accompanying the same, and returned the other agreement to Clark. The natural inference would be that she returned it to Mr. Clark for Mr. Carr as the latter requested. Nothing in her conduct, until after the final tender by Mr. Carr, evinced any belief or contention on her part that the contract was not executed. On the contrary, it is all consistent with the theory that she considered the matter of the contract a completed transaction and was desirous only of a full performance of its terms. Although Clark was Mrs. Dwyer's own agent, she could, nevertheless, make him the custodian of the contract for the benefit of Carr, and if she did so and delivered the contract to Clark for Carr, as the evidence tended to show and as the court manifestly believed she did, it was a sufficient delivery to complete its execution as a subsisting contract. There was reason to believe from the evidence that Clark chose to retain possession of the agreement because of his suspicions that Hollingsworth was to have an interest in the purchase, and as a means of obtaining for himself a larger share of the commission, and not because of any notion that the agreement would not be fully executed unless he should deliver it to Carr or to Carr's agent. The evidence sustains the finding that the contract was delivered.

The next contention is that the contract was obtained by fraud and that the price agreed on for the property was inadequate and that for these reasons performance should have been refused. From what has been said it will be seen that the negotiations on behalf of Mrs. Dwyer were conducted by

Clark as her agent. He was a real estate broker who had been doing an extensive business as such in Los Angeles for many years prior to this transaction. It would be presumed that he acted in good faith, was true to his trust, and that the vendee was not aware of any evil design on his part toward his principal, unless such design or circumstances indicating it were made apparent to the vendee. The court below, after what appears to have been a very fair and patient hearing on the subject, found in favor of the plaintiff. The evidence is voluminous and it is useless to discuss it at length. It may be said that while there were some circumstances which might raise a suspicion that there was collusion between Clark and Hollingsworth, with the intent to induce Mrs. Dwyer to sell for the sake of the commissions to be divided between them, they were by no means of such controlling significance as to require a finding to that effect, much less to justify this court in overturning the decision of the trial court on the subject. Nor was there sufficient evidence of false representations by Hollingsworth, either to Clark or to Mrs. Dwyer, to require a finding that the contract was fraudulently obtained by him for Carr. There is some evidence that the property was worth more than the price named and there was also evidence that it was worth less. The fact appears to be that prices of land in that vicinity were rising at that time and that it was difficult at the time of the trial to ascertain the precise time at which they reached the values at which this sale was made. It is also shown that the market value of this lot, in common with real estate generally in Los Angeles, subsequently increased rapidly and materially, and it is evident that at the time the contract was made no person could foresee how long this upward movement of prices would continue or how far it would go. The evidence shows that this sale was for a higher price per foot than any sale of property in that vicinity previously made. Under these circumstances, the claim that the sale was necessarily unfair because of inadequacy of consideration cannot be sustained. Possibly the evidence would have been sufficient to have sustained a finding of fraud and unfairness, if such finding had been made, but it is clearly insufficient to justify us in setting aside a finding that there was no fraud or unfairness.

The plaintiff was not in default by reason of his refusal to comply with the contract at the exact time of the demand on the twenty-sixth day of April, 1905. Time was not of the essence of the contract. His delay was caused by a desire to ascertain positively whether or not Forester, the owner of the lot adjoining the lot in question and who had taken possession of a two-foot strip along the northern line of the lot, intended to claim title to said strip or whether he would yield possession on demand. The delay thus excused was not unreasonable and not sufficient to put the buyer in default.

On the twenty-seventh of April, the day after this tender, the plaintiff began an action in the superior court to enforce performance of this contract. That action was removed to the United States circuit court upon the ground that Mrs. Dwyer was a citizen of the state of Louisiana. She died on June 22, 1905, and on August 8, 1905, Wesley Clark, a citizen of California, was appointed administrator of her estate in California by the superior court of Los Angeles County. On August 28, 1905, while a demurrer to the complaint therein was pending and undecided, the plaintiff voluntarily asked that the suit in the United States court be dismissed and judgment of dismissal thereof was thereupon given. The defendant claims that the judgment of dismissal is a bar to the maintenance of the present action. His theory is that by the removal of the first action to the United States circuit court the superior court of the county of Los Angeles was forever divested of all power and jurisdiction over the subject-matter of this particular cause of action. Some remarks in the opinions in *Friedman* v. *Israel,* 26 Feb. 801; *Baltimore etc. Ry. Co.* v. *Fulton,* 59 Ohio St. 575, [53 N. E. 265], and *Cox* v. *East Tennessee etc. Co.,* 68 Ga. 446, are cited in support of this rather startling proposition. But the cases merely decide that after the dismissal in the federal court the plaintiff cannot go back to the state court and continue or renew the original action in that court. And so far as they appear to uphold the doctrine contended for they have been directly overruled by the later cases of *Gassman* v. *Jarvis,* 100 Fed. 146; *Texas C. C. Co.* v. *Starnes,* 128 Fed. 183; *McIver* v. *Florida etc. Co.,* 110 Ga. 223, [36 S. E. 775], and other cases that might be cited. The rule has long been established that a judgment of dismissal given upon motion of the plaintiff, before the hearing or trial

of any issue of law or fact and without any determination of the merits of the cause, is no bar to a subsequent suit in any court upon the same cause of action. (2 Black on Judgments, sec. 720, p. 1082; *Merritt* v. *Campbell,* 47 Cal. 542; *Pierce* v. *Hilton,* 102 Cal. 276, [36 Pac. 595]; *Parks* v. *Dunlap,* 86 Cal. 189, [25 Pac. 916]; *Pyle* v. *Piercy,* 122 Cal. 385, [55 Pac. 141]; *Westbay* v. *Gray,* 116 Cal. 667, [48 Pac. 800]; 23 Cyc. 1139, 1140.) The court below correctly held that this judgment was no bar to the present action.

A number of errors of law are urged to have been made by the trial court in its rulings upon evidence. As before said, the trial appears to have been very fair and thorough. It would extend this opinion to an unnecessary length to treat of all these alleged errors in detail. None of them was of any substantial importance and none appears to have had any material bearing upon the decision in the case. For the most part the rulings are correct. Those that may have been technically erroneous are insubstantial and immaterial. One instance deserves larger mention. Clark testified that between March 4, 1905, and March 17, after the duplicate contracts had been forwarded to Mrs. Dwyer and before they were returned, certain other real estate agents made to him offers to buy this property. On cross-examination by defendant the court refused to allow him to tell the prices offered. This ruling was put upon the ground that the offered evidence was not pertinent to the issue as to the delivery to Carr of the duplicate subsequently returned to Clark. It was clearly immaterial on that point. Moreover, it was not disputed that Clark never did actually deliver that paper into Carr's custody. Afterwards in the progress of the trial these agents were permitted to testify as to what they said to Clark in making these offers, but were not allowed to say whether or not they were authorized by any proposed buyer to pay the prices offered, or whether the buyers were able and willing to buy. The only point to which this evidence could relate was the alleged fraudulent conduct of Clark, and as it was not claimed that Clark was informed in whose behalf the offers were made nor as to their wealth and ability, the rejected evidence was clearly irrelevant upon that subject.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.