[L. A. No. 2569. In Bank.—April 7, 1911.]

In the Matter of the Estate of LELIA BONNER DWYER, Deceased.

WILL—POWER OF EXECUTOR TO SELL REALTY—BEQUEST OF PROCEEDS TO TRUSTEES — SALE BY TESTATOR IN LIFETIME — PROCEEDS OF SALE PASS UNDER RESIDUARY CLAUSE.—Where a will of a testatrix, after providing for the payment of certain special pecuniary legacies, directed that all her real estate, with a specified exception, should be sold by her executors to the best advantage, and, after the payment of such legacies, which were expressly charged upon the real estate so to be sold, bequeathed "all the rest and residue of the proceeds of said real estate so to be sold" to certain persons named, as trustees in trust, to found and maintain a home for aged and infirm men, and, by a residuary clause, bequeathed the remainder of her estate to her husband, the only proceeds of her real property passing to such trustees were proceeds of such real property as she owned at her death and which her executors were empowered to sell. The proceeds of a portion of her real estate, sold by her in her lifetime under a contract for its sale which had become executed before her death, and which proceeds were collected by her executors after her death, did not pass to such trustees, but passed under the residuary clause. There is nothing in the provisions of sections 1301 or 1303 of the Civil Code militating against such a construction.

ID.—SALE IN LIFETIME NOT PRESUMED TO FACILITATE PURPOSE OF TRUST. —Under such a will it cannot be assumed that the proceeds of all real property which the testatrix owned at the time her will was made was intended by her to go to such trustees, and that any sale made by her thereafter was to facilitate that purpose.

ID.—POWER OF EXECUTOR TO SELL—PROPERTY OWNED BY TESTATRIX AT DEATH.—Such a provision was not a devise, either specific or general, of any real property, either to the trustees of the Home or to the executors for their benefit. The latter were given simply a naked power of sale, not directed to any specific real property, but in terms operating solely upon such real property as the testatrix owned at her death, and the bequest to the trustees was only of the proceeds of such real estate as the power of sale could operate upon.

ID.—CONTRACT TO SELL REALTY — EQUITABLE CONVERSION — EXECUTED CONTRACT.—When a contract for sale of real property binding on the parties is executed, an equitable conversion is worked, the purchaser being deemed the equitable owner of the land and the seller the owner of the purchase price. This equitable conversion, deemed to exist from the time a valid contract of sale is entered into, may or may not be absolute. Whether it is or not will depend upon whether the terms of the contract of sale are subsequently complied with. If there is no default in that respect, but, on the contrary, the purchaser performs all the conditions precedent which under the contract entitle him to a conveyance on a given day, he will be deemed on that day to be the owner of the land and the seller to be the owner of the purchase price. The refusal of the contracting owner of the land to perform his part of the contract and make the conveyance to which the purchaser is entitled cannot affect the *status* or rights of the parties as to the property.

APPEAL from a decree of the Superior Court of Los Angeles County distributing the estate of a deceased person. James C. Rives, Judge.

The facts are stated in the opinion of the court.

George J. Leovy, and Hunsaker & Britt, for Appellants.

Alexander H. Van Cott, Benjamin E. Page, and Edgar W. Camp, for Respondent.

Denis & Loewenthal, H. W. O'Melveny, and O'Melveny, Stevens & Millikin, for Administrator.

LORIGAN, J.—This is an appeal by the trustees of the J. M. Bonner Memorial Home from so much of the decree of distribution in the above estate as awarded to Emma J. Bonner and others, the heirs at law of deceased, the proceeds of the sale of a certain lot in the city and county of Los Angeles known as the "Broadway" property.

Testatrix was a resident of and domiciled in the city of New Orleans, Louisiana, where she died in June, 1905, leaving a last will and an estate consisting of real and personal property in the states of Louisiana and California and real property in other states. Her will dated July 16, 1901, was duly admitted to probate, and letters testamentary issued at New Orleans on September 5, 1906.

The will of the testatrix, in as far as its provisions are involved here, after declaring that she had no descendants or ascendants, provided for the payment of certain special pecuniary legacies, and then further provided:—

"Third. I desire all my real estate, except the residence and lots situated in the square bounded by First, Second, Coliseum and Chestnut streets in the city of New Orleans, to be sold by my executors to the best advantage and after the payment of the aforegoing special pecuniary legacies, which are expressly charged upon said real estate so to be sold, and are not to bear upon any other portion of my estate, I will and bequeath all the rest and residue of the proceeds of said real estate so to be sold (to certain persons named), as trustees in trust to found and maintain in New Orleans a home for aged and infirm men, to be called The John M. Bonner Memorial Home."

By subsequent clause she named her husband, Alexander J. Dwyer, her universal residuary legatee, bequeathing him all property of whatever nature she might die possessed, other than that theretofore specially bequeathed, and expressly including therein the residence and lots owned by her in the square bounded by First, Second, Coliseum, and Chestnut streets in the city of New Orleans.

The husband of testatrix predeceased her in April, 1904, but she made no change in her will respecting the residuary bequest to him.

The administration of the estate of deceased had in Louisiana was completed, distribution made, and the estate closed there in 1906. All special legacies were paid; the J. M. Bonner Memorial Home was incorporated, and something over the sum of one hundred and twenty-six thousand dollars was received by the trustees thereof under the administration of the estate in Louisiana.

In August, 1905, the will of testatrix was admitted to pro-

bate here as a foreign will and the only administration now pending is in this state.

At the time of making her will the testatrix owned in California, in the county of Los Angeles, certain parcels of real estate consisting of what was called the Broadway property, property known as The Farm, and other real property near the city of Pasadena and in the city of Los Angeles of large value. The only property, however, administered on in this state, were proceeds of the sale of the Broadway property, the Farm property and some personal effects. The other property owned by testatrix in Los Angeles County at the date her will was made was sold by her in her lifetime, she receiving full payment of the Pasadena property herself. Part of the purchase price of the other real estate (not including the proceeds of the sale of the Broadway property) had been received by testatrix in her lifetime, the balance was collected by the testamentary dative executor of her will, under the administration of her estate in Louisiana, and such proceeds from the sale of the Pasadena property and the other Los Angeles lots were distributed to the heirs · at law of the deceased, under the administration of the estate in Louisiana.

At the time her will was made, as we have said, the testatrix was the owner of the Broadway property. In March, 1905, three months prior to her death Mrs. Dwyer contracted in writing to sell this property to one J. E. Carr for one hundred thousand dollars, she to make a conveyance thereof to Carr on or before May 13, 1905, upon the latter making certain cash payments and executing notes and a mortgage for the balance of the purchase price. Prior to April 27, 1905, Carr tendered her the money, notes, and mortgage and demanded a conveyance of the property which Mrs. Dwyer refused to make, whereupon Carr immediately brought an action against her for specific enforcement of the contract. On June 25, 1905, while this action was pending, Mrs. Dwyer died. Carr then dismissed the first action and brought a similar suit against the administrator with the will annexed of her estate in which, on August 20, 1906, a judgment was rendered in favor of Carr for specific performance of the contract, the court determining the respective rights of the parties as of May 13, 1905, the date provided in the contract for

the delivery of the deed by Mrs. Dwyer to Carr. On appeal to this court by the administrator with the will annexed the judgment was affirmed (*Carr* v. *Howell,* 154 Cal. 372, [97 Pac. 885]), whereupon said administrator made a deed to Carr, the latter making the cash payment and delivering the notes and mortgage to the administrator as the contract provided and the decree of the court required.

In due course thereafter the administrator filed his final account, together with his petition for the distribution of the estate, asking in the latter that the court determine who were entitled thereto and to make a decree accordingly.

Cross-petitions were filed by both the heirs at law of testatrix and the trustees of the J. M. Bonner Memorial Home, and as addressed to the proceeds of the sale of the Broadway property, consisting of cash and the notes and mortgage securing the deferred purchase price thereof, each asked for distribution thereof in their favor. The court distributed the entire proceeds to the heirs at law and the trustees of the J. M. Bonner Memorial Home (hereafter to be referred to as the trustees of the Home) appeal.

The view of the superior court was that under the will of testatrix the only proceeds of her real property given to the trustees of the Home were proceeds of such real property as she owned at her death and which her executor was empowered to sell; that at her death she did not own the Broadway property, having sold it in her lifetime to Carr; that the proceeds of such sale to which she was entitled when she died were personal property which would have gone to her husband as universal residuary legatee had he lived; that by his death prior to testatrix, such residuary legacy to him lapsed, and no disposition over on such event being provided for, and no change in her will having been subsequently made by testatrix, the heirs at law of testatrix (and respondents are conceded to be such) took all property which otherwise would have gone to the husband as residuary legatee, including the proceeds of the sale of the Broadway property.

This conclusion of the trial court appellants insist was erroneous when the intention of the testatrix as disclosed by her will and the circumstances surrounding its execution are taken into consideration; that further the court failed to correctly apply the general principles of law when a gift, such as is

made to the trustees of the Home, is to be considered, and ignored certain provisions of the Civil Code of the state under which the trustees claim they were entitled to have these proceeds distributed to them.

Now as to these claims. Starting with the cardinal rule for guidance in the interpretation of wills—that the intention of the testator must be sought for and carried out—it is insisted by the trustees of the Home that the will under consideration and the circumstances surrounding its execution disclose an intention on the part of Mrs. Dwyer that the proceeds of all of the real property which she owned when her will was made (excepting, of course, the lots in New Orleans), should be applied to the establishment and endowment of the J. M. Bonner Memorial Home and that the sale of the Broadway property made by her was made simply to facilitate in her lifetime the creation of the fund which she intended at her death should be devoted to the creation of the Home. It is insisted in this regard that courts look with favor on endowments for charitable or philanthropic purposes; that testatrix had a warm regard for her deceased uncle J. M. Bonner, from whom she had derived the California property, and in whose memory she desired to establish the Home; that it was only a natural and reasonable desire on her part that the proceeds of this property which she had derived from him should be devoted to that purpose; that her estate outside of California amounted to almost five hundred thousand dollars, a large portion of which was left to her husband as residuary legatee; that by specific legacies she had provided for these respondents who as her heirs at law are here contesting the right of the trustees to these proceeds; and that it is evident from the will that she did not intend they should have anything more than she had specifically bequeathed to them, and certainly none of her real property. Under these considerations it is insisted that an intention of the testatrix is disclosed to devote the proceeds of all property owned by her when her will was made to the establishment and endowment of the Memorial Home, and the appellants cite *Littig* v. *Hance*, 81 Md. 46, [32 Atl. 343]; *Kenady* v. *Sinnott*, 179 U. S. 606, [21 Sup. Ct. 233, 45 L. Ed. 339]; *Conn. T. & T. Dep. Co.* v. *Chase*, 75 Conn. 683, [55 Atl. 171]; *Miller* v. *Malone*, 109 Ky. 133, [95 Am. St. Rep. 338, 58 S. W. 708],

and *Nooe* v. *Vannoy*, 6 Jones's Equity (59 N. C.) 185, in support of their contention.

Without just now discussing the cases cited, but giving consideration to the other matters suggested, we do not perceive how in any particular they support the claim made by appellants.

Every testator knows that his will only takes effect upon his death, and only operates upon such property as he then owns, and that in the mean time his freedom to deal with his property is not in any respect curtailed, and there is nothing in the will of the testatrix here to indicate that she intended to limit her right to deal, in her lifetime, with any of her property just as she pleased, to transfer her real property into personalty or *vice versa,* and to have the provisions of her will as to the disposition of her estate apply at her death to the character of the property as she then owned it.   In fact, the provisions of this will could bear no other construction.   There is no force in the assertion that the paramount intention of the testatrix as to her real estate was that the proceeds of all that she owned at the execution of her will, particularly the California property which she derived from her uncle, should be devoted to the establishment of the Memorial Home.   Certainly the will expressly declares no such intent.   It says nothing about California real property, or about any specific real property or its proceeds.   Besides, as to all her property the paramount intention of the testatrix was that her husband should be abundantly provided for; she was particularly solicitous that his comfort should be assured by having in her estate at her death ample property of such a character—personal property—as would fall into her residuary estate and go to him as her residuary legatee.   So solicitous was she in this respect that in the clause bequeathing the proceeds of her real estate to the trustees she expressly charges the real estate to be sold for that purpose, with the payment of the special pecuniary legacies, and declares that they are not to bear upon the residuary bequest to her husband.   If the claim of counsel for the trustees could prevail, testatrix on making her will, no matter what the changed condition of her estate might be thereafter, could not sell any real estate, the proceeds of which could go into the residuary fund for the benefit of her husband; no matter to what extent

the vicissitudes of fortune might deplete her personal estate, all of which was to go to him, she could not replenish or increase the residuary fund by selling any of her real property unless by making a change in her will. But it is unnecessary to proceed further with any general discussion of the intention of testatrix as to these trustees of the Home because her intention as to what portion of her estate they shall take is plainly and clearly stated in the only clause of her will which gives them anything. There is nothing inartificial about the will of testatrix in any respect. It expresses with accuracy just what disposition of her estate is to be made among her beneficiaries thereunder and when the clause in favor of the trustees of the Home is examined and the language used there is given its natural and ordinary import, the testatrix clearly declares what proceeds of her real estate the trustees shall take and from the sale of what real estate itself the proceeds for the benefit of the Memorial Home shall be derived. The only gift to the trustees is in clause 3 of the will, and the language used there leaves no room for any question as to what proceeds and the proceeds of what property owned by the testatrix should be devoted to establish the Memorial Home. Her declared intention is that all her real estate (except the lots in New Orleans) is "to be sold by my executor to the best advantage" and after payment of the specific pecuniary legacies which are expressly charged upon the real estate "so to be sold" she gives the residue of the proceeds of said real estate "so to be sold" to the trustees in trust to found the Memorial Home. Under this clause and for the purposes declared in it, a general power of sale is given by the testatrix to her *executor* to sell her real estate, pay the special pecuniary legacies, and turn the remainder over to the trustees of the Home. By the very terms of the clause this power of sale, under the execution of which alone her executor was to derive the funds for the Memorial Home, could only be exercised after her death, and could only apply to real property which she owned at the time of her death. Certainly this language cannot by any process of construction be held to mean anything other than that the proceeds of the sale of real estate which were to go to the trustees of the Home were the proceeds of such real estate as the testatrix owned at her death, and upon which the power of sale given him

could operate, and clearly and expressly negatives the claim of the trustees that it was the intention of the testatrix that the proceeds of all real property which she owned at the time her will was made was intended by her to go to the trustees of the Home, and that any sale made by her thereafter was to facilitate that purpose. She undoubtedly intended to leave real estate at her death which, in her judgment, would be sufficient to establish the Home. This she did, and it is evident from the clause of her will referred to that it was all she intended to do.

It will be observed, too, that after making her will testatrix sold her Pasadena and other real property in Los Angeles County, receiving for the former at least sixty thousand dollars, and after her death her dative testamentary executor collected some four thousand dollars as a balance due her from the sale of the other real property here. No claim was made by the trustees of the Home on distribution in the Louisiana court that they were entitled to these funds as proceeds of real estate which testatrix had intended, when she made her will, should be devoted to the establishment of the Home, and which real estate she sold to facilitate in her lifetime the creation of a fund for that purpose. On the contrary, these proceeds were distributed to the heirs at law. Obviously, all the interested parties, and the Louisiana court, were of the opinion that the bequest to the Memorial Home was only of the proceeds of real estate owned by testator at her death, and which property the executor was expressly empowered to sell, which were to go to found the Memorial Home—a view, the correctness of which we are satisfied there can be no doubt.

As to the authorities relied on by counsel for appellants and referred to above, they have no application under the bequest in question. Those cases hold that where a testator by his will directs the sale of specific property after his death and payment of the proceeds to designated legatees, if the testator makes a sale of the specific property in his lifetime and the proceeds are held intact, they pass to the legatees; that a sale by the testator will be held to have been made simply to facilitate the creation of the fund designed for the legatees. In all these cases it will be noted, however, that the property directed to be sold or disposed of was specifically designated

—either particular lots or tracts of land or personal property consisting of mortgages, bonds, or other described securities—the proceeds of which the legatees were given. There the clear intention of the testator was to make the legatees—either the wife, children, or near relatives of the testator—the recipients of the proceeds of specific property after his death. It was held that the sale by the testator in his lifetime of the specific property devised or bequeathed, and retention by him intact of the proceeds was for the purpose of facilitating his intention that the legatees should have the avails of the specific property; that an intention to benefit the legatees is presumed to continue even after the changes in the form of the property made by the testator in his lifetime, and where, particularly, as in the cases cited, any other construction would have defeated the intention of the testator to provide for the legatees.

Here, however, there was no devise of the proceeds of the Broadway-Street property as such, or a devise of any specific real property, or the proceeds, to the trustees of the Home. The power of sale to the executor applied only to such property as the testatrix owned at her death.

The bequest of the proceeds of her real estate to the trustees, it is true, was a specific bequest, but it was in no particular a bequest of the proceeds of the Broadway or any other specific property. On the contrary there was a declared intention that the trustees should take only the proceeds of the real property she owned at her death and upon which the power of sale given her executor could alone operate. Hence, as there was no specific bequest to them of the proceeds of the Broadway property which she had sold in her lifetime, the cases relied on can have no application.

Appellants, however, insist that if their position, just discussed, is untenable, still they are entitled to the proceeds of the Broadway property by virtue of sections 1301 and 1303 of the Civil Code, applied to the provisions of the will and to the contract for the sale of the property to Carr by the testatrix before her death.

The first section relied on (1301) provides: "An agreement made by a testator, for the sale or transfer of property disposed of by will previously made, does not revoke such disposal; but the property passes by the will, subject to the same remedies on the testator's agreement, for a specific per-

CLIX Cal.—43

formance or otherwise against the devisees or legatees, as might be had against the testator's successors, if the same had passed by succession."

The other (1303) declares that: "A conveyance, settlement, or other act of a testator, by which his interest in a thing previously disposed of by his will is altered, but not wholly divested, is not a revocation; but the will passes the property which would otherwise devolve by succession."

But appellants are in no position to invoke these provisions of the code.

While at common law the general rule is that a sale, or an executory contract of sale of property devised is a revocation of the devise, and our code provisions have modified the common-law rule as to an executory contract of sale, still there is no disposition of property to appellants which could bring them within the benefit of the modification of the common law doctrine. While the sections apply to either real or personal property which a testator has disposed of by his will and subsequently contracts to sell, we are only concerned with them here as far as appellants claim they apply to the Broadway property. But here there was no devise, specific or general, of the Broadway property, or of any real property whatever, either to the trustees of the Home or to the executor for their benefit. The latter was given simply a naked power of sale, not directed to any specific real property, but in terms operating solely upon such real property as the testatrix owned at her death, and the bequest to the trustees was only of the proceeds of such real estate as the power of sale could operate upon. On no possible theory can it be said that either the power of sale or the bequest to the trustees of the proceeds of real property was a devise of any real property or could have any application to real property which the testatrix contracted to sell in her lifetime, as the power to be exercised by the executor and the benefits accruing to the trustees relate by the precise terms of the will to real estate which is owned by the testatrix at her death. And as neither the power of sale nor the bequest could apply to any real estate except that which the testatrix owned at her death, there is no room for the claim that there was in the will any disposition in favor of the trustees of any specific real property relative to which, as the testatrix had entered into an executory contract of sale of it

during her lifetime, brought the appellants—trustees—within the benefit of the sections of the code which they rely on as entitling them to the proceeds of such sale.

Nor can these sections be invoked by appellants on the theory that the contract between the testatrix and Carr with respect to the sale and purchase of the Broadway property was simply executory at the time of her death; that the ownership of the property was in testatrix when she died and hence, as a portion of her real property owned by her at her death, the trustees of the Home were entitled to its proceeds.

The contract of sale between Carr and testatrix was not executory merely at her death, but in equitable contemplation, as far as ownership of the land in Carr and the right of Mrs. Dwyer to the purchase price only are concerned, the contract had become an executed one some time before her death.

When a contract for sale of real property binding on the parties is executed, an equitable conversion is worked; the purchaser of the land is deemed the equitable owner thereof and the seller is considered the owner of the purchase price. The equitable conversion thus deemed to exist from the time a valid contract of sale is entered into may or may not be absolute. Whether it is, or not, will depend upon whether the terms of the contract of sale are subsequently complied with. If there is no default in that respect, but, on the contrary (and dealing now with the contract involved here) the purchaser performs all the conditions precedent which under the contract entitle him to a conveyance on a given day, he will be deemed on that day to be the owner of the land and the seller to be the owner of the purchase money. The fact that the contracting owner of the land refuses to perform his part of the agreement and make the conveyance to which the purchaser is entitled on compliance with the contract, cannot affect the *status* or rights of the parties as to the property. The purchaser having performed or offered to perform his covenants at the date when the contract called for a conveyance to him, equity considers the property as belonging to him as of that date, and the owner as simply holding the legal title in trust for him. To make a concrete application of the principle. Mrs. Dwyer contracted to sell the Broadway property and make a deed to Carr, if by May 13, 1905, the latter should pay a certain sum in cash and execute notes and a

mortgage for the balance of the purchase price. On the deed day—May 13, 1905—Carr tendered payment as the contract required, and Mrs. Dwyer refused to accept it and make the deed, and, as the record shows, not because she did not want to sell the property, but because she wanted to get more money for it. On her refusal, Carr brought an action for specific performance. The superior court decided he was entitled to such performance as of May 13, 1905, and to a deed as of that date, and as that carried with it the right to possession as of that date, awarded him the rents and profits of the property therefrom, and charged against him the taxes imposed on the 'property from that date. This decision was on appeal affirmed in all respects by this court (*Carr* v. *Howell,* 154 Cal. 372, [97 Pac. 885]), and the only theory on which the reciprocal rights of the parties as fixed by the trial court could be sustained, was that those rights were to be measured as of the date when Carr was entitled to the deed; the contract was to be deemed performed on the deed day, the purchaser being entitled to the property as owner at that time, acquiring all rights as such, and subject to all obligations proceeding from such ownership; that although the refusal on the part of Mrs. Dwyer to transfer the title by actual conveyance necessitated an action for specific performance to accomplish it, still, when the decree was entered, as far as the title was concerned, the transfer thereof was by relation as to the thirteenth day of May, 1905; that what Mrs. Dwyer should have done on that day, in legal contemplation, was done, and the legal title passed as of that date. This being true, it necessarily follows that Mrs. Dwyer had sold all her interest in the Broadway property on the thirteenth day of May, 1905, and her only right was to the balance of the purchase price in cash and the notes and mortgages; she had no interest in the Broadway property after that date; that interest had, by the performance of the contract on his part and under the doctrine of relation, completely vested in Carr. The only right which Mrs. Dwyer had under the sale was a right to the proceeds thereof which were at her death a portion of her personal estate and fell into the residuary clause of her will, and to which the respondents as her heirs at law were entitled.

These sections of our Civil Code upon which appellants rely were adopted from the New York Code and Revised Statutes.

Our section 1301 corresponds with section 569 of the New York Code and section 45 of the New York Revised Statutes and our section 1303 to section 571 and section 47 of the New York Code and Revised Statutes respectively, and, under the general rule, are assumed to have been adopted here with the construction placed on them by the courts of New York.

In *Roome, Adm. etc.* v. *Phillips*, 27 N. Y. 357, the original plaintiff in the action there contracted with defendant for the sale of certain real property in the city of New York, payment by defendant of the purchase price to be made on a date specified and delivery of a deed to him by plaintiff vendor on that date. The vendor, at the date fixed for consummation of the contract, attended at the place agreed on to receive the purchase price and deliver the deed, but defendant did not appear. The vendor commenced an action for specific performance of the contract and shortly afterwards died, leaving a will made before the contract for the sale of the property was entered into, whereby he directed his executor to sell off all his real property and pay over the proceeds to his mother and aunt in certain proportions. The administrator with the will annexed proceeded with the suit. One of the questions arising in the case was whether a naked power of sale given to an executor to sell real estate was applicable to land, for the sale of which testator had made a contract and tendered performance in his lifetime. It was held that it was not, the court saying:—

"But there is a further difficulty in this case. The power of sale conferred upon the executor by the will, had become inapplicable to this land, by the sale of it which the testator had made in his lifetime. The will directs the executor to sell and convey all the testator's real estate, either at public or private sale, upon such terms as he may think proper and most beneficial to his estate. But the manner of sale and the terms had all been conclusively determined by the testator before the will took effect by his death, and a sale had actually been made; and the power does not look to the conveyance of the naked title to lands, of the beneficial interest in which the testator has divested himself in his lifetime. The sale was not a revocation of that part of the will, express or implied, so as to require an attested instrument to satisfy the statute, nor was the case within the provision which declares

that a contract by the testator for the sale of land devised shall not revoke the devise incidentally made (12 R. S., p. 64, sec. 45) ; for the land in this case was not devised, though the proceeds of the sale were. Simply, the duty which the executor was appointed to perform respecting this land, could not be performed by him, because, at the death of the testator, there was no such land to be sold."

In *Lewis* v. *Smith,* 9 N. Y. 502, [51 Am. Dec. 706], an action was brought by the widow of testator to recover dower in a tract of land which testator had contracted to sell in his lifetime. The power of sale contained in the will authorized the executor to sell all the testator's "fast estate." This excerpt from the syllabi embraces the gist of the opinion of the court:

"A power of sale contained in a will authorizing executors to sell all the testator's 'fast estate' does not embrace lands which have been sold by contract by the testator, the purchase money being unpaid, and the title still remaining in him. The interest remaining in the vendor in such a case is a right to the money due on the contract, which is not real, but personal estate."

(See, also, *McNaughton* v. *McNaughton,* 34 N. Y. 201, and *Williams* v. *Haddock,* 145 N. Y. 144, [39 N. E. 825].)

While additional authorities from other states might be cited, we refer to the New York cases only, on account of the similarity of our code provisions and the construction placed on them prior to their adoption here by the New York courts; particularly in the earlier decisions quoted from.

There is nothing in *Mott* v. *Ackerman,* 92 N. Y. 539, cited by appellants, which in any respect disturbs the rule announced in *Roome* v. *Phillips* and in *Lewis* v. *Smith.*

Nor do the several New York cases relied on by appellant support their position. These New York cases are *Knight* v. *Weatherwax,* 7 Paige, 182; *McCarthy* v. *Meyers,* 5 Hun, 83; *Hopkins* v. *Gourand,* 23 N. Y. Supp. 189, 3 Misc. 619; *Wagstaff* v. *Marcy,* 25 Misc. 121, 54 N. Y. Supp. 102; *Nutzhorn* v. *Siltig,* [70 N. Y. Supp. 287, 34 Misc. 486] ; *Van Tassel* v. *Burger,* 119 App. Div. 509, 104 N. Y. Supp. 273.

These cases all involve the application of these similar New York sections to devises made by testators and the effect thereon of contracts for the sale of the devised property sub-

sisting at their death. In two essential and vital particulars, however, these cases differ from the case at bar. In each of them—save one where the testamentary disposition applied to the proceeds of a specified mortgage—there was a devise of specific real property, or the testamentary disposition related to specific real property, and in each case the contract for the sale of the property specifically devised was clearly executory at the time of the death of the testator, because either the time fixed by the contract for performance—the deed day—was subsequent to the death of testator or had been postponed by mutual consent to a date which was subsequent thereto. Clearly, under such conditions and by virtue of the code provisions, the property specifically devised passed to the specific beneficiaries, subject to the rights of the vendee under the contract. But neither of the conditions which in the cases cited made the rule applicable, exist in the case at bar. Here there is no devise of any real property; only a naked power of sale is given to the executor to sell such real property as the testatrix owned at her death.

The Broadway property could not fall under this general power of sale because testatrix had become completely divested of her ownership therein under a contract of sale which, in equitable contemplation, was fully executed a month prior to her death. The only right which Mrs. Dwyer then had relative to that property was solely a right to the purchase price thereof which, as personal property, fell into the residuum of her estate, and was properly distributed by the superior court to the respondents, her heirs at law.

We have examined other points made by appellants against the correctness of the decree of distribution, but deem them neither tenable nor requiring discussion.

The portion of the decree of distribution appealed from is affirmed.

Angellotti, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.