(110 App. Div. 476)

## In re HESS' ESTATE.

(Supreme Court, Appellate Division, Fourth Department. January 3, 1906.)

**1. TAXATION—TRANSFER TAXES.**

A contract whereby the first party agreed to reside on and work a farm as long as the second party should live and to care for the second party, and the second party granted and conveyed the land subject to said agreements to the first party, was not a transfer in contemplation of the death of the grantor, within Taxable Transfer Act, Laws 1896, p. 869, c. 908, § 220, subd. 3, imposing a transfer tax on transfers made in contemplation of the death of the grantor.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1702, 1703.]

**2. SAME.**

Under a contract whereby the first party agreed to reside on and work a farm as long as the second party and his wife, or either of them, should live, and to care for them, to harvest and thresh the wheat growing on the farm, using whatever remained beyond the needs of the farm for his own benefit, to market the salable wheat they cut on the premises for the benefit of the second party, and to sell any surplus of grain not needed for use, in consideration of which the second party granted and conveyed, subject to these agreements, the farm, with the stock and personal property thereon, reserving the right to support, maintenance, and residence on the farm, and the first party agreed not to sell the premises during the lifetime of the second party or his wife, the transfer did not fall within Taxable Transfer Act, Laws 1896, p. 869, c. 908, § 220, subd. 3, imposing a tax on transfers intended to take effect in possession or enjoyment at or after the death of the grantor.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1702, 1703.]

McLennan, P. J., and Williams, J., dissenting.

Appeal from Surrogate's Court, Wyoming County.

In the matter of the appraisal of the property of the estate of George Hess, deceased, under the acts in relation to taxable transfers of property. From orders holding certain property not taxable, an appeal is taken. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Frank K. Cook, for appellant.

Irving G. Botsford, for respondent.

SPRING, J. On the 20th day of February, 1904, Silas L. Strivings, who was the party of the first part, and George Hess, party of the second part, entered into a written agreement whereby Strivings agreed to remove, with his wife, to the farm of Hess, in the town of Castile, occupying the dwelling in common with Hess and his wife, supporting and caring for them during their natural lives. Strivings agreed to "reside upon and work" said farm as long as said Hess "and his wife, or either of them, shall live." By the terms of the contract the party of the second part was to harvest and thresh the wheat growing upon the farm, using whatever remained beyond the needs of the farm and the family use for his own benefit. The party of the first part was to market the "salable wood now cut on the said premises" for the benefit of said second party, and was also to sell "any surplus of grain not

needed for use." In consideration of the agreement, it was provided that Hess "does hereby grant and convey, subject to said agreements, to said Silas L. Strivings and Mae L. Strivings his wife" the farm mentioned, describing it by metes and bounds, together with the stock and personal property thereon. The "right to support, maintenance and residence on said farm" was reserved during the life of said Hess and his wife, and Strivings and his wife agreed not to sell said premises during the lifetime of the grantor or his wife. On the same day that this contract was executed Mr. Hess executed his last will and testament, bequeathing the bulk of his property, amounting to about $70,-000, to Mrs. Strivings, appointing her executrix thereof, and also in said instrument ratifying and confirming the agreement now under consideration.

We think that by this agreement and conveyance it was intended to vest the absolute title and immediate possession of said premises in the Strivings, subject to the maintenance of the grantor and his wife. There was no limitation upon the control and management of the farm and personal property or the benefits accruing therefrom, except in the minor particulars referred to, and which will be adverted to later. It was, therefore, a contract and conveyance founded upon a good consideration, to wit, the care and maintenance of these old people until the death of the last survivor, with the enjoyment of the premises to commence on or before the 1st of April after the execution of the instrument. Strivings and his wife went into the possession of the farm in March, 1904, and were in the occupancy thereof when Hess, who was 80 years of age, died in August of that year, leaving him surviving his wife, 83 years of age, but no descendants in the lineal line.

Section 230, subd. 3, of the taxable transfer act (Laws 1896, p. 869, c. 908), imposes a tax upon the transfer of property when "made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." There is no suggestion that the conveyance was in contemplation of death. The apprehension of impending dissolution which this clause signifies did not exist. Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390; Matter of Spaulding, 49 App. Div. 541, 63 N. Y. Supp. 694, affirmed 163 N. Y. 607, 57 N. E. 1124. We also think it is clear that the transfer does not come within the compass of the other provision of the statute. The acts which Strivings was to perform with reference to the sale of certain property on hand when he went into possession were required in view of the fact that Hess had already brought the personal property into being, and it was property which should be converted into cash. He had cut the wood and had gathered the surplus grain. It was not the product of the labor of Strivings, and even then no surplus was created until after the stock had been fed and the needs of the farm provided for; nor did it relate to any crops grown after Strivings became vested of the title and possession. These limitations, meager as they are, pertain to personal property, and the possession and enjoyment of the same for the benefit of the farm and stock of Strivings are not restricted or interfered with. The possession of the farm is not limited at all. Strivings was in control all the time.

There was no joint occupancy or control of the farm. Mr. Hess reserved the right to reside on the premises "as hereinbefore provided"; that is, he and his wife were to occupy "the dwelling house in common" with the Strivings. That was the extent of the possession reserved, and the products and stock belonged to the grantees, and these products comprised the income from the property transferred. The support and maintenance of Hess and his wife were not dependent upon the farm. If its avails were inadequate to provide for them, the obligations still existed upon Strivings. The support and maintenance were entirely disconnected with the management of the farm, but constituted one of the chief considerations for the conveyance and transfer. If the title did not vest immediately upon the delivery of possession, the restriction upon the sale of the farm during the lifetime of the grantor or his wife is meaningless. If they had no title they could not convey, and the mere fact that the grantor insisted upon the ownership remaining in the Strivings while he and his wife lived indicated that he expected he had parted with the title absolutely and to become effective at once.

The conveyance is made "in consideration of the foregoing covenants and agreements by the party of the first part" and "subject to said agreement." Support is sought to be found in these clauses, particularly the last one, for the contention that there is no immediate vesting of the title. The agreements referred to are chiefly the common occupancy of the dwelling house and the "support, board and care" of Hess and his wife. These are, at the utmost by the language employed, made chargeable upon the premises. When a conveyance is made "subject" to any lien or burden, the title passes unqualifiedly. If the conveyance had been subject to the annual payment of $500 to Hess and his wife during lifetime, the vesting of the title would not have been delayed. If there had been a failure to pay the specific sum, the grantor could not reacquire the premises. He could enforce his claim. If there had been a breach in failing to support Hess or his wife or in any of the covenants undertaken by Strivings, the possession and ownership would not have been revested in Hess. The title had passed from him for all time, but he had imposed upon it certain burdens or obligations in the nature of liens. The title or possession was unaffected by the impositions cast upon the grantees. There was no right to revoke the conveyance in Hess. The covenant to support and maintain Hess and his wife was a personal one, and for its breach an action for damages would lie, or one in equity to have the necessary sum therefor determined and made a charge upon the premises. Redpath v. Redpath, 75 App. Div. 95, 77 N. Y. Supp. 668; Stehle v. Stehle, 39 App. Div. 440, 57 N. Y. Supp. 201. Had Hess desired to prevent title passing until the death of himself and his wife, and dependent upon performance of certain conditions by the Strivings, he would have made an agreement of that kind, instead of executing a conveyance absolute in form, accompanied by possession, and without any restrictions relating to the management of the farm or the disposition of its proceeds. The title to these premises does not hang suspended, awaiting the caprice of this old lady, Mrs. Hess. If the board or clothing or attention furnished does not exactly suit her whims, she can-

not terminate the interest of the grantees and summarily eject them from the premises.

If the widest latitude is given to this conveyance to protect the grantor and his wife, the ownership was transferred by the deed subject to be defeated at their instance upon failure to perform by the grantees. If such be the construction, and to which I do not assent, the title became absolute in the Strivings. The only manner in which they can be dispossessed and deprived of their freehold, if that version is to prevail, is by a judgment based upon nonperformance by them. Even with that interpretation of the conveyance there is no support for the position that the "transfer * * * was intended to take effect in possession or enjoyment at or after" the death of Hess and his wife.

The tax imposed in pursuance of this act is upon the right of succession, not upon property (Matter of Dows, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508), affecting voluntary transfers, those not founded on a good consideration. Matter of Miller, 77 App. Div. 473–481, 78 N. Y. Supp. 930; Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed on opinion below 178 N. Y. 575, 70 N. E. 1094. In Matter of Thorne, 44 App. Div. 8, 60 N. Y. Supp. 419, Joseph Thorne transferred property of considerable value to Eunice Hoff, impressing the same with a trust for his care during his lifetime, and she was to furnish him money as he needed it. The court held her title absolute, and the transfer was not subject to the payment of the transfer tax. To the same effect is Matter of Edgerton, 35 App. Div. 125, 54 N. Y Supp. 700, affirmed 158 N. Y. 671, 52 N. E. 1124.

The cases relied upon by the counsel for the appellant are not analogous. In Matter of Brandeth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148, the donor transferred shares of stock to his daughter upon the express agreement that he was to receive all the dividends declared on the stock during his lifetime, with the right to vote the stock "the same as though no transfer had been made." The beneficial enjoyment of the stock was, therefore, postponed until his death. He retained the life estate or use, while the remainder passed to the beneficiaries only upon his death. The gift was not "intended to take effect in possession or enjoyment" until after the death of the donor, and was, therefore, taxable. So in Matter of Cornell, 170 N. Y. 423, 63 N. E. 445, the donor reserved the right to use whatever of the net income accruing from the securities transferred he desired, and also the right to dispose of $10,000 of the property assigned.

The dividing line between those cases and the present one is well defined. In the present case the title in possession and the use of the avails and the increment passed to the grantees. In the other class of cases the beneficial enjoyment did not commence until the death of the donor, and there is also the further fact that the conveyance to the Strivings was for an adequate consideration. In each of the cases mentioned the transfer was unquestionably a gift, and it is to that class of transfers to which this tax relates. See cases cited, supra. The order should be affirmed, with costs.

Decree and order affirmed, with costs.

HISCOCK and NASH, JJ., concur; the latter in a separate memorandum. McLENNAN, P. J, and WILLIAMS, J., dissent.

NASH, J. I concur in the opinion of Justice SPRING. The conveyance of the fee of the farm to the grantees is in terms absolute. It is made to Silas L. Strivings and Mae L. Strivings in consideration of the covenants and agreements of Silas L. Strivings to remove, with his wife and family, to the farm of Hess, and occupy the dwelling house in common with Hess and his wife, and support, board, and care for them on said premises, during the natural life of both Hess and wife and each of them, except clothing, Strivings to reside upon and work said farm so long as Hess and wife, or either of them, shall live. Provision is made for the harvesting and disposal of the crop of wheat growing on the farm, and the salable wood "now" cut on the premises, and Strivings further agrees to furnish a horse and conveyance for driving purposes when requested by Hess. These are the personal covenants and agreements of Silas L. Strivings, in consideration of and subject to which the conveyance in fee is made to Strivings and wife, to them and their heirs, forever, "reserving the right to support, maintenance, and residence on said premises as hereinbefore provided during the life of said second party and his said wife, and each of them." Subject to this reservation, also, Strivings and wife, as such, took an absolute fee as tenants by the entirety. The reservation was not of any specific interest of Hess and wife in the farm, either of title or possession, but of the right to support, maintenance, and residence out of or on the farm, which, in case of the failure of Strivings' at any time to perform his covenants and agreements, would have afforded Hess, and since his death Mrs. Hess, an equitable remedy in such form as the existing circumstances would at any time in the lifetime of Hess and wife, or of either of them, require. Stehle v. Stehle, 39 App. Div. 440, 57 N. Y. Supp. 201; Redpath v. Redpath, 75 App. Div. 97, 77 N. Y. Supp. 668.

McLENNAN, P. J. (dissenting). The sole question presented by this appeal is, did the grantees named in the contract in question acquire an absolute title to the real and personal property described therein upon its execution and delivery to them? If they did, clearly the determination of the learned Surrogate's Court that the transfer of such property was not taxable under the transfer tax law was correct, and the orders appealed from should be affirmed. It is equally well settled that, if such title did not vest in the grantees until at or after the death of the grantor, such transfer is taxable. Such is the language of the statute. Subdivision 3 of section 220 of the act provides:

"When the transfer of property is made by a resident, or by a non-resident when such non-resident's property is within this state, by deed, grant. bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." such transfer is subject to taxation. Laws 1896, p, 869, c. 908. Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148; Matter of Cornell, 170 N. Y. 423, 63 N. E. 445.

In Matter of Green, 153 N. Y. 223, 47 N. E. 292, the court said:

"It matters not whether the transfer is by grant or by gift, so long as it was intended to take effect in possession or enjoyment at or after the death of the grantor or donor. The devolution of title is subject to the tax."

Whether a transfer of property by grant is taxable does not depend upon the manner of paying the consideration. Such payment may be made in annuities. It may be postponed until after the death of the grantor. If adequate, it may be made in such manner and at such time as the parties may agree upon. The test is, was the transfer intended to take effect in possession or enjoyment at or after death? As was said by Justice Hatch in Matter of Thorne, 44 App. Div. 8, 60 N. Y. Supp. 419:

"If the testimony given upon the proceeding establishes that the testator did not intend that Mrs. Huff should have the possession and enjoyment of the property until his death, then the case is brought within subdivision 3 of section 220 of the tax law."

In that case it was held that the transfer was not taxable, solely because the evidence failed to show that the gift to Mrs. Huff by the testator was subject to any legal limitation. In the case at bar it is not claimed that the conveyance was made in contemplation of death, or that the consideration expressed in the agreement was not adequate, so that we have only to inquire whether the transfer was intended to take effect in possession or enjoyment at or after the death of the grantor. The intent must be ascertained from the language of the contract, if not ambiguous, or, if its meaning is in doubt, the situation of the parties and the surrounding circumstances may be considered in connection with the language in determining its true meaning, and the purpose and intent of the parties in making it.

The agreement was dated February 20, 1904. One Silas L. Strivings was named as party of the first part, and George Hess, now deceased, party of the second part. The first party agreed in substance that he, with his wife and family, would remove to the farm and residence of the second party on or before the 1st day of April following, and that he would thereafter, with his wife, occupy the dwelling house of the second party in common with him and his wife, and would board and care for them, reside with them, and work the farm so long as the second party and his wife or either of them should live. He also assumed certain other minor obligations. The income of the farm was to belong to him, subject, as we think, to the support and maintenance of the second party and his wife. So far, the contract was a most simple one. Strivings and his family were to live with, care and provide for, Hess and his wife in Hess' dwelling house on the farm, during their natural lives. He was also to work the farm during such time; and for such care, support, maintenance, and work he was to have the avails of the farm. But, in addition, it was provided that, in consideration of the covenants and agreements to be kept and performed by Strivings, Hess "does hereby grant and convey, subject to said agreements, to said Silas L. Strivings and Mae L. Strivings, his wife, of Gainesville, N. Y., all of the following described property, real estate and premises." Then follows a description of the premises. The agreement then continues:

"With the appurtenances thereto, and together with all the farming tools, wagons, sleighs, conveyances and stock and household furniture belonging to said second party, * * * to them and their heirs forever: Reserving the right to support, maintenance, and residence on said premises as hereinbefore provided, during the life of said second party and his said wife and each of them."

It is then provided that the grantees shall not sell or convey the premises during the lifetime of the grantor or his wife. We think it clear that by the agreement the title to the property in question did not vest in the grantees upon the execution and delivery of such instrument, and that it was not the intention of the parties that it should so vest. The true meaning and interpretation of the instrument is that the grantees should not become vested with the title until after the death of George Hess and his wife, and then only in case they had kept and performed the covenants and obligations which they assumed. Such we think is the express language of the agreement. The grant is made "subject to said agreements." Such language is susceptible of no other meaning than that the grantees will become the owners of the subject of the grant if they live in the farmhouse with the grantor, and support the grantor and his wife in sickness and in health, and work the farm for and during their natural lives. If Silas L. Strivings had died immediately after moving into Hess' dwelling house, and it then became impossible for him to perform his "agreements," could it be claimed notwithstanding that the farm and all the property thereon would belong to his estate, and that Hess would have been relegated to an action at law to recover damages as for breach of contract? Hess never agreed that Strivings and his wife should ever become the owners of his farm by paying a money consideration, but in consideration of their society, their personal care and attention, and of working the farm, during the natural lives of Hess and of his wife. Such obligation could not be discharged by Strivings by procuring some one else to work the farm, or by inducing some other man and his wife to reside with the grantor and his wife during their natural lives. The contention of the respondent can only prevail by holding that by the agreement in question it was intended that Hess had parted with all title to his farm, notwithstanding every item of the consideration which induced the grant failed. If, as before suggested, Strivings and his wife died the day following their removal to Hess' dwelling house, how would it be possible to realize any of the advantages which induced the conveyance? Hess and his wife could not have for companions the persons selected by them, could not be cared for, maintained, and supported by those whom he deemed proper to render such service to him and his wife as long as they or either of them might live. "Subject to said agreements" means that the title to the farm should not vest until their performance.

The other clause in the contract is equally significant—"Reserving the right to support, maintenance and residence on said premises" during the life of Hess and of his wife. That clearly effected a reservation out of or from the thing granted, and conclusively indicates that it was not intended that an absolute title should vest in the grantees until the obligations assumed by them had been performed. By the instrument the grantor conveyed all his household furniture. Is it

reasonable to suppose that the title to it vested absolutely in the grantees, and that the morning after they came to live with him the grantor did not own the bed upon which he and his wife slept, and that the title to all the furnishings and conveniences in his house was absolutely vested in the grantees and could be sold to satisfy a judgment against Strivings, unless he should claim and could establish their exemption? We think it was not the intention of the agreement in case of the failure of Strivings and his wife to perform the essential features of the obligations which Strivings had assumed, perhaps because of his death or insolvency, that Hess should be deemed to have parted with the title to his farm, and his only remedy for redress would be to recover a money judgment as for breach of contract against Strivings or his estate. We think such interpretation of the contract is unreasonable, and that it is not warranted by any language contained in the agreement, or by any of the surrounding circumstances. As was said in the Matter of Cornell, supra:

"In case of death or insolvency of the donee or of his failure to comply with his agreement, a court of equity would have appointed a new trustee of the fund and the testator would not have been relegated to the position of a mere creditor of the donee."

In the contingency suggested, a new trustee might have been appointed in this case, were it not for the fact that the consideration for the transfer, and all of it was of a personal character, was of a character that could not be performed by any persons other than the grantee and his wife. As before suggested, they were to have the farm only upon condition that they should reside with, care for, maintain, and support the grantor and his wife, and work their farm, during the natural lives of the grantor and his wife. The grantees named were the persons selected by the grantor to perform such services, and the peformance of such obligation could not be delegated by them.

We conclude that by the contract in question only a conditional sale and transfer of the property in question was effected; that it did not become absolute until the death of the grantor and his wife, and then only provided the grantees had reasonably performed the obligations assumed by them; that the transfer was "intended to take effect in possession or enjoyment at or after" the death of the grantor.

It follows that the orders appealed from should be reversed, with costs payable by Silas L. Strivings individually, and the order of the Surrogate's Court, affirming the report of the appraiser providing for the tax of the property in question, should be affirmed.