[S. F. No. 6667. In Bank.—January 26, 1918.]

M. J. KELLY, County Treasurer, etc., Appellant, v. ROSA M. WOOLSEY et al., Respondents.

TAXATION — INHERITANCE TAXES — TRANSFER IN CONTEMPLATION OF DEATH—PURPOSE OF STATUTE.—The provision of the inheritance tax law regarding transfers made in contemplation of the death of the grantor, or to take effect in possession after such death (Stats. 1905, 341), was not intended to prohibit ordinary transfers by gift or otherwise, if not made in contemplation of death, nor postponed in possession or enjoyment until after the death of the donor or grantor; its main purpose was to prevent the evasion of taxation by means of transfers made in bad faith for that purpose.

ID.—CONVEYANCE IN CONSIDERATION OF SUPPORT OF GRANTOR—WITHHOLDING FROM RECORD.—Property transferred by deed of conveyance passing present title and possession and enjoyment, where no intent to evade the tax appears, is not taxable, although such deed is not recorded until the grantor's death.

ID.—INTENT OF WRITTEN TRANSFER—PAROL EVIDENCE.—In determining whether property transferred is subject to inheritance taxation parol evidence of the real agreement intended by a written instrument is permitted.

ID.—INTENT OF TRANSFER TO POSTPONE POSSESSION.—It is only where the intent exists that the grantor shall have the possession and enjoyment of the property during his life, that property transferred is subject to taxation at the death of the grantor.

ID.—BURDEN OF PROOF.—To subject transferred property to an inheritance tax the intent to postpone the possession and enjoyment of the property until after the death of the donor or grantor must be proved affirmatively, either by the instrument of transfer or by some other agreement, oral or written, express or implied, but such intent may be shown by circumstances from which such intent may be reasonably inferred.

ID.—TRANSFERRER REMAINING IN POSSESSION.—The mere fact that the transferrer remains in possession and enjoyment by sufferance does not of necessity establish an intent or agreement to postpone possession and enjoyment by the grantee till the death of the grantor, where there are circumstances justifying a reasonable inference that there was no such intent.

ID.—TRANSFERRED PROPERTY—FINDING AGAINST INTENT TO EVADE TAX SUSTAINED BY EVIDENCE.—In an action to recover inheritance taxes on property transferred by a decedent, evidence examined and found sufficient to sustain a finding by the court that there was no intent to evade the inheritance tax law, or to postpone the passing of title and absolute control of the property to the grantee.

ID.—DELIVERY OF DEED—UNCONDITIONAL DELIVERY TO THIRD PERSON—PASSING OF TITLE.—A deed delivered unconditionally to a third person with intent that it shall operate as a present transfer of title to the grantee passes the title as of the date of the delivery of the deed to such third person, although the deed is not actually delivered to the grantee until after the grantor's death.

ID.—JOINT BANK ACCOUNT—EVIDENCE.—Evidence in relation to a joint bank account established by an aunt with her niece, in which were deposited moneys of the aunt as well as property of the niece examined, and such evidence found not to establish the fact that any of the funds contributed to the joint account by the aunt remained undisposed of by her in her lifetime for her own use.

ID.—APPEAL—FINDINGS—FAILURE TO FIND ON ISSUE IN ABSENCE OF EVIDENCE.—A failure to find on an issue upon which there is no evidence is not assignable as prejudicial error.

APPEAL from parts of a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

W. H. L. Hynes, U. S. Webb, Crosby & Richardson, Robert A. Waring, and J. C. Altman, for Appellant.

J. A. Elston, and Fitzgerald, Abbott & Beardsley, for Respondents.

SHAW, J.—The plaintiff appeals from certain parts of the judgment, and from an order denying his motion for a new trial.

The action was begun in September, 1909, to recover inheritance tax alleged to be due upon certain properties, transferred by Rosa M. Shattuck in her lifetime to the defendants. It is alleged that the transfers were made by said Rosa M. Shattuck, without valuable consideration, in contemplation of her death, and that they were intended to take effect in possession and enjoyment after her death. The transfers in question are the following: (1) A deed to Rosa M. Woolsey, dated August 16, 1906, conveying certain parcels of real estate in the town of Berkeley; (2) a deed to the defendants Clinton R. Morse, Blanche Morse, Ruby R. Morse and Nellie M. Winter, dated August 15, 1906, conveying a lot in the town of Berkeley; (3) a deed dated August 15, 1906, conveying to Mary C. Morse and Minnie Morse two lots in the town of Berkeley; (4) balances upon two joint accounts standing in the names of Rosa M. Shattuck and Rosa M. Woolsey at the time of the death of Rosa M. Shattuck, one in the First National Bank of Berkeley, the other in the Berkeley Bank of Savings.

Rosa M. Shattuck died on September 13, 1908. The law in force on the subject at the time of these transfers provided for the imposition of inheritance tax upon all property transferred by the owner thereof, if "made in contemplation of the death of the grantor, vendor or bargainor, or intended to take effect in possession or enjoyment after such death." (Stats. 1905, p. 341.)

The court below found that none of the transfers was made in contemplation of death; that the transfers to Rosa M. Woolsey were not intended to take effect in possession or enjoyment after the death of the grantor, but were intended to have full effect at once, except a certain part of the real

property conveyed, consisting of the dwelling-house occupied at the time by said Rosa M. Shattuck, as to which part the intention was that the possession and enjoyment of the grantees should be postponed till after the death of the grantor; that the transfers made by the two conveyances to the Morses were intended by the grantor to take effect in possession and enjoyment after her death and not before; and that the transfers of the said bank accounts to Rosa M. Woolsey were not made either in contemplation of death, or with the intention that they should take effect in possession and enjoyment upon, or after her death. Judgment was accordingly given that inheritance tax be paid upon the value of properties so conveyed to the Morses, and upon that part of the property conveyed to Rosa M. Woolsey on August 16, 1906, embraced in the dwelling-house and appurtenances occupied at the time by Rosa M. Shattuck; and refusing to order the payment of taxes on the remainder of said lands, or upon the said bank accounts. The appeal is taken from portions of the judgment refusing to allow the claim of inheritance tax on said parts of the property.

The inheritance tax law looks to the substance rather than to the form of the transaction. The "payment of the tax can only be defeated or avoided by such a *bona fide* conveyance as parts absolutely with the possession, title and enjoyment in the grantor's lifetime." (Dos Passos on Inheritance Taxation, 329.) "It is not an entirely unnatural desire, and certainly not one infrequently indulged, for property owners to attempt to evade the inheritance tax and transmit estates to the objects of their bounty unimpaired; and even though the transfer is not actuated by any such motive, its practical effect, so far as the public revenue is concerned, is the same. It is the purpose of such statutes to preclude, so far as possible, this evasion of taxation, whether with fraudulent intent or not, and to secure to the state its revenue on all transfers which have their occasion in the death of the transferrer; but it is not the purpose of the statute to inhibit ordinary transfers, by gift or otherwise, if not made in contemplation of death, or not postponed in enjoyment or possession until after the death of the donor or grantor." (Ross on Inheritance Taxation, sec. 111.) In cases where property is conveyed in consideration of the support of the grantor by the grantee during the former's

life, "if a present title is conveyed, if the property passes in possession and enjoyment as of the date of the conveyance, no intention to evade the tax appearing, the transfer is not taxable as having been made in contemplation of death or to take effect at or after death; and this although the deed is withheld from record until the grantor's death." (Ross on Inheritance Taxation, sec. 114; *Lamb* v. *Morrow*, 140 Iowa, 89, [18 L. R. A. (N. S.) 226, 117 N. W. 1118]; *Estate of Hess*, 110 App. Div. 476, [96 N. Y. Supp. 990].) The character of the transaction is not wholly determined by the terms of the written instrument employed to accomplish it. Parol evidence of the real agreement is permitted with a latitude similar to that indulged to show a resulting trust or to transform a deed absolute on its face into a mortgage. (*People* v. *Moir*, 207 Ill. 190, [99 Am. St. Rep. 205, 69 N. E. 905]; Ross on Inheritance Taxation, sec. 112.) These are the leading principles of law upon which the provisions of the statute are to be applied to the present case.

The finding of the court that the property here in controversy was not transferred to Rosa M. Woolsey in contemplation of death, or with the intention that the transfer should take effect in possession or enjoyment after the death of Rosa M. Shattuck, is general in terms and follows the language of the statute. It amounts to a finding against the appellant upon every element of the case mentioned in the above statements of the law. The transfers in the present case were made by instruments in writing. The finding is, in effect, a finding, with respect to the property exempted, that there was no intent to evade the inheritance tax law, or to defraud the state thereof, and no intent to postpone the passing of title and absolute control of the property to the grantee, or to restrict the grantee's use and enjoyment thereof in any manner not compatible with the legal effect of the instruments by which the transfers were made, and that there was no agreement except those expressed by said instruments.

It is the contention of the appellant that the finding above mentioned is contrary to the law and the evidence. It is not contended that the finding that the transfers were not made by Rosa M. Shattuck in contemplation of death is contrary to the evidence. The controversy arises upon the question whether the transfers were intended to take effect in posses-

sion and enjoyment only upon or after the death of Rosa M. Shattuck. The finding of the court being to the contrary, the evidence must be considered on the theory that every reasonable inference deducible therefrom favorable to the respondent must be deemed to be an established fact. There is no substantial conflict in the testimony. , The inquiry is confined to a consideration of the different inferences that may be reasonably deduced from the evidence.

Rosa M. Shattuck was possessed of an estate for her life in the real property formerly belonging to her deceased husband, worth from four hundred thousand to five hundred thousand dollars. She also possessed other real property, which, in 1906, was estimated to be worth in excess of five hundred thousand dollars. She had no children or lineal descendants. John W. Havens was a nephew of her deceased husband. Rosa M. Woolsey was her niece. The Morses mentioned above were also of kin, but the degree of relationship does not appear. She was of a gentle, affectionate, generous, benevolent and trustful disposition, and much attached both to Havens and to her niece, Mrs. Woolsey, and her husband. On November 27, 1905, she conveyed to Havens, as a gift, her said life estate in the property of her deceased husband. He immediately took possession thereof, and that transfer is not in controversy. The transfers to Mrs. Woolsey and to the Morses covered all of the property that she owned, except her household goods. She was then seventy-seven years of age and was in her usual health. Mrs. Woolsey, with her husband and family, had been residing on a farm in Sonoma County for about twenty-five years. A large lot or block of the land included in the deed to Mrs. Woolsey was the homestead of Mrs. Shattuck. It consisted of two dwelling-houses, one of which she occupied, a barn, a chicken-yard, a garden and a pasture. For some ten years prior to that time Mrs. Shattuck had desired to arrange her affairs so that Mrs. Woolsey could live with her, or near her, on said premises. Shortly before the making of these transfers, while on a visit to Mrs. Woolsey in Sonoma County, Mrs. Shattuck obtained Mrs. Woolsey's consent to go to live on the Berkeley homestead. She then returned to Berkeley, executed the deed to Mrs. Woolsey, informed Mrs. Woolsey that she had done so, and asked her to come to Berkeley. The Woolseys thereupon removed to Berkeley,

arriving there in October, 1906, and thereafter they resided in the old Shattuck residence on the Shattuck homestead, adjoining the new dwelling-house thereon occupied by Mrs. Shattuck. No rent therefor was ever paid, nor was it ever mentioned.

John W. Havens had been for many years the confidential agent and adviser of Mrs. Shattuck, and the manager of her affairs. The deeds to Mrs. Woolsey and to the Morses were all prepared, signed, and acknowledged at the same time, under the direction of Havens, and were thereupon delivered to him without any instructions as to further delivery, but with the understanding that he "should keep them and record them some time," and should give the possession of them to the grantees at "the proper time," that being left to his judgment. Nothing was said or understood to the effect that he should keep the Woolsey deed until after Mrs. Shattuck's death, nor was there any instruction that he should hold it as an escrow, or for the benefit of Mrs. Shattuck, or subject to her order or control. To Mrs. Woolsey Mrs. Shattuck said, "I have made a deed. I have given the deeds to John [meaning Havens] for you. It is all yours. Everything is yours. All I have got here is yours. You might as well learn how to manage it." She also frequently said to Mrs. Woolsey that the property was all hers to do with as she pleased. In September, 1907, a parcel of the land deeded to Mrs. Woolsey was conveyed to the Shattuck Hotel Association as a hotel site, in exchange for six thousand eight hundred shares of its stock. In negotiating for the sale the attorney for the association had an interview with Mrs. Shattuck in the presence of Mr. Woolsey and Havens, in which Mrs. Shattuck said, "I have very little interest in the matter. I have turned everything over to Rosa," meaning Mrs. Woolsey. The attorney was then ignorant of the deed to Mrs. Woolsey. After learning of Mrs. Woolsey's deed the attorney prepared a deed to be executed by Mrs. Shattuck and Mrs. Woolsey to the Hotel Association. In company with Mr. Havens he went to Mrs. Shattuck's house and there read said deed to her, saying, "I understand that this property has been deeded away, and it will be necessary for Mr. Woolsey to join in the deed." To which she said, "Yes, that has all been arranged; the property belongs to Rosa. John has the deed." Referring to the stock to be

taken in exchange, she said that it made no difference to her whether it was issued in her name and indorsed by her to Mrs. Woolsey, or whether it was issued immediately to some-one else. The deed was executed by both of them, and the stock was issued in the name of Mrs. Shattuck, and by her indorsed to Mrs. Woolsey, and delivered over to Havens for delivery to Mrs. Woolsey, but it was not actually delivered by him until after Mrs. Shattuck's death. All the parties knew that Havens had the Woolsey deed and the stock, and no demand for either was made on him by them. Some time during the two years of Mrs. Shattuck's life, after the making of the Woolsey deed, another parcel of land was conveyed to the First National Bank of Berkeley for three thousand dollars in cash and ten thousand dollars in stock of said bank. The cash was deposited to the aforesaid joint account, and the stock was issued to Mrs. Woolsey.

The deeds were not recorded until after Mrs. Shattuck's death, and were not actually delivered by Havens into the possession of the grantees until after that event. Neither Mr. Woolsey nor Mrs. Woolsey were informed of the making of the deeds to the Morses. They remained ignorant thereof, and supposed that the deed to Mrs. Woolsey included it all, until after the death of Mrs. Shattuck. On October 3, 1906, Mrs. Shattuck had some money on deposit with the First National Bank of Berkeley, and on that day she, by a writing signed by her, opened a joint account of herself and Rosa M. Woolsey, payable to either of them, with said bank and transferred said deposit to said joint account. From that time forward Mr. Woolsey had the active management of the property formerly belonging to Mrs. Shattuck, including that embraced in the deeds to the Morses, as well as that transferred to Mrs. Woolsey. A large part of it was leased to tenants. These leases were renewed from time to time under Mr. Woolsey's management, the new leases being usually signed by him, alone, or by Mrs. Shattuck, as lessor. The money received as rent was deposited to the joint account. There was no request by Mrs. Shattuck that this should be done, nor any agreement to that effect. So far as the evidence shows, the matter was never mentioned by her, although, of course, she must have been aware of the fact. Mrs. Woolsey and Mrs. Shattuck each checked upon this account for their respective individual uses. Each would

sign checks thereon for management expense, but usually these checks would be signed by Mrs. Shattuck. The property was assessed in the name of Mrs. Shattuck and the taxes were paid by checks on the joint account which, generally, were signed by her.

In explanation of the fact that he consulted Mrs. Shattuck about the property, and had her sign leases and checks for taxes and expenses, Mr. Woolsey testified that he attended to the business entirely as representing his wife, and had no agreement with Mrs. Shattuck to act as her agent; that he would talk with his wife and Mrs. Shattuck, and the latter would advise and make suggestions; that he more frequently had Mrs. Shattuck sign the expense checks because the business was done in the office in the house in which Mrs. Shattuck lived, and as she was generally around, it was more convenient to go to her than to Mrs. Woolsey; that in regard to the leases, Mrs. Shattuck was generally known as the owner, while the Woolsey deed was not public, and he thought it was more satisfactory to Mrs. Shattuck to have it kept quiet; that while it was not necessary to take matters of concern to the estate to Mrs. Shattuck, he would "defer to her, naturally, of course, as a man would under the circumstances, as far as I ever could. We naturally felt under great obligations to Mrs. Shattuck. She had been my wife's benefactress; had practically turned over everything she had to my wife, and I couldn't do less than consider her, and consult with her, on every occasion"; that when he first came to the property it was practically new to him, and she would talk with him and advise him as to the better policy, and that he always felt that he would never give Mrs. Shattuck occasion to think that he would ignore her, and always took her into consultation whenever he could, although the business was entirely in his hands and he managed it and looked after it just as if it was his own, and for his wife.

Upon moving into the house Mrs. Woolsey immediately took the active management of all of the property, and always thereafter, through her husband as her agent, continued to manage the same, excepting, however, the house in which Mrs. Shattuck lived. During the following two years of Mrs. Shattuck's life the Woolseys used the horses and carriage, the barn, chicken-yard, garden and pasture, and all

of the homestead, excepting only the Shattuck dwelling and the grounds immediately around it. Mrs. Shattuck also made such use as she desired, although it was but little, of the horses, carriage, barn, chicken-yard, garden and pasture. Nothing was ever said between them on the subject of this mutual use, and there is no evidence that it was in pursuance of any arrangement between them whereby Mrs. Shattuck reserved, or was granted, the right to such use.

There was no evidence of an express agreement that the possession or enjoyment of the property was to be given to Mrs. Shattuck during her life, or for any period, or that the possession or enjoyment thereof by Mrs. Woolsey was to be postponed until the death of Mrs. Shattuck. · The contention of the appellant is that the circumstances conclusively establish the intent of the parties, as to all of the property, that Mrs. Shattuck should have the possession and enjoyment thereof during her life. By the terms of the act, it is only where such intent exists that property transferred is subject to such taxation at the death of the transferrer. This intent is essential and must be proven, either by the instrument of transfer, or by some other agreement, oral or written, express or implied. Such agreement or intent may be shown by circumstances from which it may be reasonably inferred, as well as by express declarations. For the purposes of the case, it may be conceded that such intent may be shown by proof, direct or circumstantial, of a parol agreement contradicting the terms of the instrument of transfer. But the mere fact that the transferrer remains in possession and enjoyment, by sufferance, or permission, or at the request of the transferee, does not of necessity establish such intent or agreement, where there are circumstances justifying a reasonable inference that there was no such intent.

The evidence supports the conclusion that the Woolsey deed was delivered to Havens with intent to pass to the grantee the present title to the property in question, and that the title thereupon vested absolutely in Mrs. Woolsey. A grant without any actual deliverey into the possession of the grantee is constructively delivered "where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed." (Civ. Code, sec. 1059.) Mrs. Shattuck signed and acknowledged the deed to Mrs.

Woolsey and handed it to Havens without conditions or
reservation of control thereof, and with directions to deliver
it to the grantee at his discretion, and without other direction
as to time of delivery, and she immediately informed Mrs.
Woolsey that she had made the deed, saying, "I have given
the deeds to John for you," and that the property was hers,
and asked her to take up her residence upon it; and she
afterward frequently repeated the statement that the prop-
erty belonged to Mrs. Woolsey. Mrs. Woolsey took posses-
sion of the property, but left the deed in the custody of
Havens. This sufficiently establishes the fact that Mrs.
Shattuck intended that Havens should hold the deed for
the benefit of and as agent for Mrs. Woolsey, and supports
the finding that the deed was delivered on the day of its date.
(*Carr* v. *Howell,* 154 Cal. 381, [97 Pac. 885].) Where a
grantor intends that the deed executed by him shall operate
as a present transfer of title, and delivers it to a third
person without condition, the title passes as of the date of
the delivery to such third person, although the deed is not
actually delivered to the grantee until after the grantor's
death. (*Sneathen* v. *Sneathen,* 104 Mo. 210, [24 Am. St.
Rep. 326, 16 S. W. 497] ; 1 Devlin on Deeds, 3d ed., sec. 275a,
p. 433.) There can be no doubt that Mrs. Woolsey assented
to the transfer. This brings the case within the rule stated
in section 1059. The finding of the court that there was a
transfer of the property and a passing of the title thereto
at the date of the execution of the deed is therefore sus-
tained by the evidence.

The evidence is also sufficient to uphold the finding that
there was no secret intent or understanding that Mrs. Shat-
tuck should have, during her life, the use and enjoyment
of the property. The court below, from the evidence, may
have inferred that she was entirely willing to trust her own
support, unasked, to the generosity and kindly affection of
her niece and nephew, believing that it would be freely pro-
vided, with the tact and grace which the mutual love and
affection between them would inspire. Such unconditional
dispositions of property by aged persons to members of the
immediate family are not unusual or infrequent. This is
shown by the many cases in the reports which have arisen
because such confidence has been betrayed, and in which
unavailing attempts are made to have a constructive trust

declared against the beneficiary.   The cases where there is no betrayal do not come before the courts for relief, and it may well be supposed that they are the rule and that the betrayals are the exception.   Therefore it cannot be said to have been unreasonable for the court below to infer that the disposition in the present case was made without any secret intent or any arrangement or understanding whatever for the benefit of Mrs. Shattuck.

In the creation of the joint account in October, 1906, she was dealing with the money she already had on hand, and was making a gift thereof to Mrs. Woolsey.   The subsequent deposits to that account were made by Mrs. Woolsey out of the rents accruing from the property, including that accruing from the property deeded to the Morses.   She was put in possession of all of this property by Mrs. Shattuck, and was not placed by her under any obligation to account for the rentals accruing during her lifetime.   The evidence shows that these deposits were made without consultation or arrangement with Mrs. Shattuck, and without any obligation on the part of Mrs. Woolsey to do so.   The inference, therefore, is that these subsequent deposits, so far as they consisted of rentals from the Woolsey property and were used by Mrs. Shattuck for her own support, were not in discharge of any implied obligation or any promise, but were made by Mrs. Woolsey as a voluntary provision for that support, and as a gift to her aunt, and that she took this method of providing for her support in order to enable her aunt to avail herself thereof freely without the annoyance or embarrassment of asking therefor, and to feel herself independent.   All these inferences are as reasonable, from the evidence, as the supposition that there was an obligation or promise by Mrs. Woolsey to do so.   It is enough to support the findings if we can say that the conclusion was not unreasonable, although the opposite inference might be equally reasonable.

The argument is made, that since it was found by the court below that the deeds to the Morses were made with the intent that they should not take effect in possession and enjoyment by the Morses until the death of Mrs. Shattuck, it must follow that the deed to Mrs. Woolsey, being made at the same time, was made with the same intent.   The circumstances, however, were materially different, and such conclu-

sion does not necessarily follow. Mrs. Woolsey was immediately informed of the deed to her, and was invited to take possession at once, which she did with the entire consent and approval of Mrs. Shattuck. The Morses were not informed of the deeds made to them, nor asked to take possession, and they received none of the rents. These differences justify the different inferences made by the court with respect to the several transactions. So, also, with regard to the dwelling in which Mrs. Shattuck continued to reside after the making of the Woolsey deed. While it was included in that deed, the conduct of the parties with reference thereto was wholly different from that respecting the other portions of the land conveyed. Mrs. Shattuck remained in possession. While there is no evidence of any express arrangement by which she was to have the right to such possession, the court may justly have inferred from the conduct of the parties that such arrangement was in fact made, as to that part. The opposite conduct respecting the other parts of the property, authorized it to infer the contrary with respect to those portions. Our conclusion, therefore, is that the finding of the court that the transfers to Mrs. Woolsey, except of the Shattuck dwelling and grounds, were not made with intent that the enjoyment and possession thereof should remain in Mrs. Shattuck until her death, or with the intent that the enjoyment and possession of Mrs. Woolsey should be postponed until the death of Mrs. Shattuck, is fully sustained by the evidence.

The appellant cites a number of cases holding that the inheritance tax cannot be escaped or evaded by a resort to any device or plan, the effect whereof is that the income, profit, or enjoyment of the property, is secured to the grantor or transferrer during his life. These cases are distinguishable from the case at bar by the fact that in each of them the arrangement was such that the enjoyment or possession was *secured* to the grantor, and in none of them did the grantor rely wholly on the kindness, affection, or gratitude of the beneficiary, as was the case here. Thus, in *Reish* v. *Commonwealth*, 106 Pa. St. 526, where the court said that the grantor could not defeat the statute "by any device which secures to him, for life," the enjoyment of the property, the grantee gave a bond to pay the income to the grantor and to allow him the free use and control of the residence

CLXXVII Cal.—22

and appurtenances during his life. This was the device referred to in the above quotation. In *Du Bois Appeal*, 121 Pa. St. 368, [15 Atl. 641], the deed of transfer created a charge on the land in favor of the grantor for the payment of his debts, contracts, and obligations, made or incurred during his life, and was conditioned that if he survived the grantee the deed should be void. In *People* v. *Moir*, 207 Ill. 180, [99 Am. St. Rep. 205, 69 N. E. 905], the transfer was made, and simultaneously therewith the grantor made a partnership agreement with the grantees, whereby one-half of the net income from the property was to be paid to the grantor. In *Lacy* v. *State Treasurer* (Iowa), 121 N. W. 179, the instrument of transfer reserved to the grantor the use and possession of the property during his life. In *State Street Trust Co.* v. *Treasurer*, 209 Mass. 373, [95 N. E. 851], the donees were not to receive any part of the property during their lives, but were to receive one-half of the income thereof, the donor retaining the other half. The property itself did not pass until his death. In *Estate of Jones*, 65 Misc. Rep. 121, [120 N. Y. Supp. 862], the deeds in question were held by the grantor, unrecorded, and without delivery until his death. In *Todd's Estate*, 237 Pa. St. 466, [43 L. R. A. (N. S.) 869, 85 Atl. 845], the grantor reserved to himself during his life a right to the income of the property. In *Matter of Cornell*, 170 N. Y. 423, [63 N. E. 445], the instrument of transfer reserved to the donor during his life all, or such part, of the net income, of the property, as he might wish. It is obvious that none of these cases is authority for the proposition that where no reservation is made, and the grantor relies on the voluntary acts of the grantee without receiving any promise, secret or otherwise, to allow him the enjoyment of the property or any part thereof, and the grantee thereafter voluntarily allows the grantor to receive a part of the income from the property, such transfer can be deemed to have been made with the intent that it shall take effect in possession and enjoyment after death.

It follows from what has been said, that the transfer of the real property by Mrs. Shattuck to Mrs. Woolsey does not come within the terms of the inheritance tax law, and that said property is not only not taxable thereunder, but also that since August 16, 1906, it has been the absolute property of Mrs. Woolsey. The effect is that the deposits made

to the joint account thereafter, from the rents of said property, were not transfers made by Mrs. Shattuck to Mrs. Woolsey, but were transfers made by Mrs. Woolsey out of her own property to the joint account, and so far as Mrs. Shattuck availed herself thereof, by checking out that money for her personal use, the amount so used was a gift by Mrs. Woolsey to Mrs. Shattuck. Necessarily the amount thereof remaining at the death of Mrs. Shattuck was not taxable as property disposed of by her in her lifetime.

The amount of money in the account of Mrs. Shattuck on October 3, 1906, when she changed it to the joint account, is not shown by the evidence or pleadings. It does appear that Mrs. Shattuck drew on said account for her personal expenses from that time until her death. In the absence of anything to the contrary, and if it were necessary to support the judgment, it would be presumed that she consumed it all for her personal support during her lifetime.

The moneys received from August 16, 1906, until the death of Mrs. Shattuck, from the rents of the three lots deeded to the Morses, were also deposited in the joint account. As this property, according to the findings, still belonged to Mrs. Shattuck, and as there is no evidence of any understanding between Mrs. Shattuck and Mrs. Woolsey respecting its disposition, except such inferences as may arise from the fact that Mr. Woolsey received and deposited it, the result would be that in equity a resulting trust might arise with respect thereto, in favor of Mrs. Shattuck, so that to that extent the joint account may be deemed to have been held in trust for her use. The amount of rents accruing from this source was not shown. Only one of said lots was improved. A large part of the property embraced in the Woolsey deed had valuable improvements thereon. On January 30, 1908, so much had accumulated in that joint account, which was drawing no interest, that ten thousand dollars was drawn therefrom and deposited to the joint account in the savings bank. At the death of Mrs. Shattuck in the following September, the balance in the commercial account was nearly seven thousand dollars. It is to be inferred that the amount received from the Morse property was relatively very small, as compared with that from the Woolsey properties. The checks drawn by Mrs. Shattuck for her personal use on the joint account would be equitably

chargeable to the rents accruing from the Morse lots, and would be applied to that part of the fund, rather than to the contributions thereto made by Mrs. Woolsey from her rents. There being evidence that she drew checks as desired for her personal use, and no evidence as to the amount of this part of the fund, it may be that it was all drawn out by her for her own use. Nothing to the contrary appearing, that fact is to be inferred in support of the judgment. It follows, therefore, that the plaintiff has failed to establish the fact that any of the funds contributed by Mrs. Shattuck to the joint account remained undisposed of by her in her lifetime for her own use. It may be added that the complaint does not assert any claim to a tax on the money deposited to this account after August 16, 1906. From these facts it appears that the question of the effect of a deposit to joint account, as a disposition of property with the intent that it shall take effect in enjoyment and possession at the death of the donor, does not arise in the case. This renders it unnecessary to consider the argument of appellant on that subject.

Appellant further claims that the findings do not cover all the matters in issue. This refers to the allegation of the complaint that in addition to the personal property hereinbefore described, Mrs. Shattuck, after August 15, 1906, and in her lifetime, transferred to Mrs. Woolsey "other personal property, the character of which was unknown to" plaintiff, owned by Mrs. Shattuck on August 16, 1906, of the value of two thousand dollars. Appellants say the evidence shows a transfer of some household goods, a horse and carriage, and six thousand eight hundred shares of stock in Shattuck Hotel Association, none of which is mentioned in the findings.

The failure to make findings on an issue is not prejudicial error unless there is evidence on the subject. There was no evidence that Mrs. Shattuck in her lifetime transferred any household goods, or horse and carriage, to Mrs. Woolsey. Apparently she continued to be the owner of this property until her death. The facts already stated show that the transaction by which Mrs. Woolsey acquired the hotel stock was, in substance and effect, not a transfer to her by Mrs. Shattuck as a gift, but an exchange by Mrs. Woolsey of a parcel of the land which she had already acquired by the deed from her aunt as aforesaid, for the stock in question.

The evidence of that transaction does not tend to sustain the allegation. Moreover, it is plain that the aforesaid allegation of the complaint referred to property owned by Mrs. Shattuck on August 16, 1906, and consequently it did not include the hotel stock. In these circumstances the failure to make findings concerning these articles of property is not assignable as prejudicial error.

The judgment and order are affirmed.

Sloss, J., Wilbur, J., Melvin, J., and Angellotti, C. J., concurred.