[L. A. No. 12305. In Bank.—June 26, 1933.]

WESTERN LOAN & BUILDING COMPANY, Appellant, v. CHARLES A. SCHEIB et al., Defendants; GORDON–HARRISON–RUSSELL, INC. (a Corporation), et al., Respondents.

Bicksler, Parke & Catlin for Appellant.

Miller & Ellis, James E. Mahon, Earle M. Daniels, Gibson, Dunn & Crutcher and Glen Behymer for Respondents.

THE COURT.—Plaintiff appeals from a judgment of the trial court decreeing that the mechanics' liens of respondents have priority over the mortgage lien of plaintiff. It is admitted that each of the mechanics' liens held by the several respondents became a lien on the real property on April 13, 1927, and that respondents have duly and properly taken all steps required by law for the enforcement of their respective liens. The sole question presented for determination on this appeal is the priority between the mortgage lien held by appellant and the mechanics' liens held by respondents.

The facts giving rise to this appeal, as found by the trial court and concerning which, except as hereinafter indicated, there is no dispute, are as follows:

In November of 1926 defendant Charles A. Scheib, the owner of certain real property in the city of Los Angeles, made a written application to the appellant for a building loan of $55,000, to be secured by a mortgage. This application for a loan was not made by Scheib personally, but was made through one S. E. Beach, the latter acting as agent of Scheib for this purpose. Scheib agreed to pay Beach a commission for his services if the loan was secured. It should here be stated that all of the negotiations between Beach, as agent of Scheib, and the appellant, were carried on by mail, the main office of appellant being located in Salt Lake City, Utah.

On December 6, 1926, the appellant wrote to Beach, as the agent of Scheib, informing him that the executive finance committee had approved the application for the loan, and setting forth the terms and conditions on which the money would be advanced. On December 7, 1926, the appellant forwarded to Beach, as agent of Scheib, a form mortgage and promissory note which, it was stated, were to be signed by Scheib, the mortgage recorded and the documents, together with a title report and other information, returned to appellant at Salt Lake City. On December 27, 1926, Scheib signed the note, and signed and acknowledged the mortgage, and left them with S. E. Beach, his agent, to be recorded and forwarded to appellant. S. E. Beach, as agent of Scheib, through his son, W. E. Beach, and pursuant to appellant's request, delivered the mortgage (but not the note) to an escrow agent with instructions to record when a title insurance policy was furnished showing the mortgage to be a first lien. On April 8, 1927, the escrow agent had the mortgage duly and properly recorded. The county recorder mailed the recorded mortgage to appellant at Salt Lake City, he having received no instructions to the contrary, and the name of appellant appearing thereon, but the evidence sustains the view that this was probably not the intent of the parties, the intent being that the recorded mortgage should have been mailed back to the escrow agent or to Beach. All during this period Beach had the promissory note in his possession as the agent of Scheib. The note was not delivered with the mortgage on April 8, 1927. On April 13, 1927, it is admitted, the mechanics' liens of respondents attached. On May 27, 1927, appellant wrote to Beach, as the agent of Scheib, as follows:

"Under date of May 16th we wrote you relative to closing the above application. Since that time we have heard nothing from you concerning the same.

"If we do not hear from you within the next ten days we will take it for granted the application will not be completed and we will cancel it from our records." On the same day, May 27, 1927, Beach mailed the note to appellant.

Subsequent to receiving the promissory note, and starting on May 31, 1927, appellant advanced various sums to

Scheib in installments, totaling $42,500. The final installment of $12,500 was not advanced because Scheib failed to complete the building as agreed. Scheib defaulted in his payments to appellant, whereupon the latter instituted this action to foreclose its mortgage, joining as defendants all parties having any record interest in the property. All defendants defaulted except the respondents.

From the above facts the trial court concluded, as a matter of law, that although appellant's mortgage was recorded on April 8, 1927, and respondents' liens did not attach until April 13, 1927, the mechanics' liens were entitled to priority over the mortgage for the reason "that prior to the actual delivery of said note to plaintiff on May 27, 1927, no indebtedness existed in favor of plaintiff for which the mortgage recorded April 8, 1927, in favor of plaintiff as mortgagee, could act as security, and plaintiff's mortgage lien . . . attached on the 27th day of May, 1927, and not prior thereto".

The sole question presented on this appeal is: When did appellant's mortgage lien attach as against respondents? Did it attach as of April 8, 1927, when the mortgage was recorded, or did it attach on May 27, 1927, when the promissory note was physically delivered? The proper answer to this question can only be determined upon ascertaining when the indebtedness between Scheib and appellant came into existence. The trial court found that this indebtedness came into existence on May 27, 1927, and not before. Under the facts, as above outlined, we are clearly of the opinion that this conclusion was correct. The problem is simply one of offer and acceptance of a contract. The appellant in December of 1926 made an offer to Scheib, through Scheib's agent Beach, to make the loan providing that Scheib executed and delivered to appellant a promissory note and mortgage, and performed certain other conditions. Until the offer was accepted by the performing of the required acts no binding obligation on the part of appellant to advance the money came into existence. In other words, no indebtedness was created until the offer was accepted. Scheib performed some of the required acts. He signed the note and mortgage, and through his agent caused the mortgage to be recorded and delivered to appellant. Title insurance was secured and other conditions performed.

But the last act necessary to complete the acceptance—i. e., delivery of the promissory note evidencing the indebtedness —was not performed. Until the note was delivered the offer of appellant to make the loan had not been accepted, and no indebtedness was created until that time. Appellant itself placed this interpretation upon the transaction. This is made clear by the letter from appellant to Beach, as agent of Scheib, of May 27, 1927, above quoted, in which it is stated that appellant has heard nothing further concerning "closing the above application", and "if we do not hear from you within the next ten days we will take it for granted the application will not be completed and we will cancel it from our records". The only reasonable interpretation of that letter is that at the time it was written (May 27, 1927), the appellant itself did not consider that any binding contract to advance the money had been entered into; that appellant considered that its offer to make the loan had not been accepted; that unless it was accepted within ten days by sending the note the application for the loan would be canceled.

Appellant seeks to avoid the application of the above reasoning to this case by the contention that Beach was acting as its agent for the purpose of accepting delivery of the note and mortgage, and that therefore the note was delivered to appellant on December 27, 1926, when Scheib signed it and left it in the possession of Beach. Of course, if Beach was in fact the agent of appellant for the purpose of accepting delivery of the note, it would be clear that the offer to make the loan was accepted on December 27, 1926. It is well settled that delivery of a contract by one of the contracting parties to a third person for the benefit of the other contracting party constitutes a good delivery. (*Carr v. Howell*, 154 Cal. 372 [97 Pac. 885]; *Kelly v. Woolsey*, 177 Cal. 325 [170 Pac. 837].) But the rule enunciated in those cases has no application to the facts of this case. For that rule to apply there must be a delivery to the third party for the benefit of the other contracting party. Here the trial court expressly found that Beach at all times was acting solely and exclusively as the agent of Scheib, and at no time was he acting as the agent of appellant. If these findings are supported by the evidence it necessarily follows that while the note was in the possession of Beach

solely and exclusively as the agent of Scheib, the possession of Beach must be considered the possession of Scheib, and the note was not delivered until May 27, 1927.

■ Appellant contends that the above findings are not supported by the evidence; that the evidence shows that Beach was the agent of appellant for the purpose of securing the execution and delivery of the note and mortgage; that the finding of the trial court that Scheib left the note and mortgage in the possession of Beach and that they were "left by him in the possession of S. E. Beach to be recorded and forwarded to plaintiff" is inconsistent with the finding that Beach was acting solely and exclusively as the agent of Scheib. After reading the record we are clearly of the opinion that the findings of the trial court that Beach at all times during this transaction was acting solely and exclusively as the agent of Scheib and at no time was acting as the agent of appellant are amply supported by the evidence.

V. R. Marsden, manager and vice-president of the appellant, testified that "This loan was negotiated by S. E. Beach. He acted in the capacity of a broker. He was not a broker for the plaintiff company. He has no connection with our company and never did have any connection with our company. He was never authorized to use our name on his office as our legal representative or as agent on behalf of our company at any time." He was then asked: "And you know that Mr. Beach had no connection whatsoever with this company in regard to this loan? A. Well, I don't say that. Q. Other than as broker for someone else? A. Yes, sir." Marsden further testified: "I know W. E. Beach. He is the son of S. E. Beach. He has no connection with our company. . . . S. E. Beach had nothing to do with these transactions. The only thing with any of these loans that Mr. Beach had anything to do with our company was merely as broker for the applicant."

In addition to this testimony of the manager and vice-president of appellant there was introduced into evidence the application for a loan made by Scheib through Beach. This application was a regular form application furnished by appellant to prospective borrowers. This form, which was signed and acknowledged by Scheib, contains the following provision:

"Charles A. Scheib, being first duly sworn, deposes and says: That I understand and agree that if this application is made by me, through any person, or by any means except by direct communication to the home office of the company at Salt Lake City, Utah, that the person I deal with is not the agent of the Western Loan & Building Company, but is My Agent."

Mr. Charles A. Scheib testified that "Mr. S. E. Beach was my agent. I asked him to act as my agent when I applied for the loan. . . . I signed the affidavit [above quoted] . . . being a statement that the agent making the application is the agent of the borrower and not the agent of the Western Loan & Building Company."

S. E. Beach testified that "I am in no manner connected with the plaintiff Western Loan & Building Company and never have been in any way only as to sending in applications for loans. I never had any connection with the plaintiff whereby I represented them in any capacity. W. E. Beach is my son. To my knowledge he has never represented plaintiff in any capacity." Beach was then asked for whom he was acting when he caused the mortgage to be recorded and replied: "Mr. Scheib. Q. You were acting for Mr. Scheib when you caused this mortgage in which he is mortgagor [to be recorded], for Mr. Scheib? A. Yes. Q. Is that correct? A. Yes, sir; he was the mortgagor and I acted for Mr. Scheib."

In the face of this testimony by the agent, S. E. Beach, by the principal, Scheib, and by the appellant's vice-president and manager, all to the effect that Beach was acting solely and exclusively as the agent of Scheib, and at no time, for any purpose, was the agent of the Western Loan & Building Company, we must hold that the findings complained of not only are supported by substantial evidence, but are supported by the overwhelming weight of the evidence. Since this is so, it follows, as already stated, that while the note was in the possession of Beach, as agent for Scheib, it must necessarily be considered as still within the possession of Scheib. It follows, therefore, that no delivery of the note took place until May 27, 1927, long after the mechanics' liens of respondents had become a lien on the real property involved.

■ Of course, since the trial court held, on substantial evidence, that no debt was incurred until May 27, 1927, the mere recording of the mortgage on April 8, 1927, could in no way give the mortgage priority over the liens of respondents. A mortgage is merely security for a debt, and if there is no debt there is no mortgage. (17 Cal. Jur., sec. 17, p. 710; sec. 161, p. 873.) Since the debt did not come into existence until May 27, 1927, the mortgage as a lien came into existence at that time. The liens of respondents dating as they do from April 13, 1927, clearly are, therefore, entitled to priority over the mortgage.

The question of priority of liens must in practically every case be controlled by a strict application of the rather technical procedure regulating the priority of lien claimants.

The judgment appealed from is affirmed.

PRESTON, J., Dissenting.—I am not in accord with the opinion as written in this cause. Under the undisputed evidence and under the findings of the court below, Scheib executed the note and mortgage and delivered them to Beach to be transmitted to plaintiff. There were no conditions or reservations made by Scheib at the time of such delivery. The facts are that on December 7, 1926, plaintiff wrote Beach, the broker in the transaction, and among other things sent him a copy of the note and mortgage with instructions as follows: "Kindly have papers properly executed, recorded and abstracted . . . after which return to this office. . . . " The court finds that on December 27, 1926, defendant Scheib signed the note and signed and acknowledged the mortgage and then finds as follows: "That said note and mortgage, after the same were signed by Charles A. Scheib, were left by him in the possession of S. E. Beach to be recorded and forwarded to plaintiff." The further finding is that Beach thereafter, through his son W. E. Beach, delivered the mortgage in escrow to the Guarantee Building and Loan Association of Hollywood; that in so leaving the mortgage in escrow, young Beach signed himself as the representative of the plaintiff and the escrow party secured the certificate of title, bringing it up to April 8, 1927. The mortgage was also recorded on the same day, and actually forwarded thereafter to the plaintiff.

Inasmuch as the certificate of title was procured and the mortgage recorded, the transaction was complete. Whether the plaintiff received the manual tradition of the papers on that day or six months thereafter, on that day the constructive delivery under section 1059 of the Civil Code took place and the authorities cited in appellant's brief apply, such as *Carr* v. *Howell,* 154 Cal. 372 [97 Pac. 885]; *Kelly* v. *Woolsey,* 177 Cal. 325 [170 Pac. 837]. Indeed, the following language of *Valley Lumber Co.* v. *Wright,* 2 Cal. App. 288 [84 Pac. 58, 59], is directly in point: "Here the note and mortgage were executed for a definite amount and there was an agreement on the part of the loan association to pay to Wright this amount, with the further understanding that the money should be used for the construction of the building, which latter was to be for the further security of the loan. The loan association was under an enforceable obligation to furnish this money and the execution of the note and mortgage was sufficient consideration for the agreement."

A kindred line of cases also includes *Stone* v. *Dailey,* 181 Cal. 571 [185 Pac. 665], and *Hotaling* v. *Hotaling,* 193 Cal. 368 [224 Pac. 455, 56 A. L. R. 734]. In each of them a deed, after execution and symbolical delivery, was actually left with the grantor himself and the delivery was held proper. In this case if Scheib himself had gone to the title company and procured the certificate and caused the mortgage to be recorded, there would have been a delivery of both the note and the mortgage on the happening of this event, even though they had remained physically in the possession of Scheib.

I think the judgment in this cause is clearly wrong and should be reversed.

Curtis, J., concurred.